STATE TREASURER v GARDNER

Docket No. 109598. Decided September 9, 1998. On application by the plaintiff for leave to appeal, the Supreme Court, in lieu of granting leave, reversed the judgment of the Court of Appeals and reinstated the judgment of the circuit court.

The State Treasurer brought an action in the Saginaw Circuit Court against James A. Gardner, Sr., a prisoner of the Department of Corrections, seeking reimbursement of the expense of his incarceration under the State Correctional Facility Reimbursement Act, MCL 800.401 *et seq.*; MSA 28.1701 *et seq.* The court, Patrick M. Meter, J., awarded the plaintiff ninety percent of the defendant's prison account and accrued and future long-term disability pension benefits. The Court of Appeals, MARILYN KELLY, P.J., and WAHLS, J. (M. R. KNOBLOCK, J., concurring in part and dissenting in part), affirmed in part and remanded the case for modification of the reimbursement order to entitlement only to sixty percent of the pension benefits, in line with the limit set forth in the garnishment subchapter of the federal Consumer Credit Protection Act, 15 USC 1671 *et seq.* 222 Mich App 62 (1997) (Docket No. 167791). The State Treasurer seeks leave to appeal.

In a unanimous opinion per curiam, the Supreme Court *held*:

This case is governed by the State Correctional Facility Reimbursement Act alone.

The federal Consumer Credit Protection Act statute was intended to limit the amount of garnishment of a debtor's earnings in instances of predatory extensions of credit so as to avoid the necessity of bankruptcy. In this case, the defendant is not the victim of a debtor-creditor relationship gone bad, but, rather, is a prisoner who is properly required to compensate the citizenry for the cost of his incarceration.

Reversed.

Justice KELLY took no part in the decision of this case.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *E. David Brockman*

and *Daniel M. Levy*, Assistant Attorneys General, for the plaintiff.

Prison Legal Services of Michigan, Inc. (by *Sandra Girard*), for the defendant.

PER CURIAM. Until his death in 1997, the defendant was a prisoner of the Department of Corrections. The State Treasurer sued for reimbursement of the cost of incarceration, and obtained an order requiring that the bulk of the defendant's prison account and pension income be paid to the state. The Court of Appeals reduced the award, but we reinstate the judgment of the circuit court.

I

In January 1990, defendant James Gardner began serving a prison sentence for criminal sexual conduct. In prison, he continued to receive monthly payments of approximately $370. The source of these payments is described in the record as a long-term disability pension. In addition, the defendant had accumulated approximately $2,200 in his prison account.

In December 1991, the State Treasurer filed a complaint in circuit court, seeking reimbursement for the expense of the defendant's incarceration.[1] The suit was filed under the State Correctional Facility Reimbursement Act.[2] MCL 800.401 *et seq.*; MSA 28.1701 *et seq.*

---

[1] Besides Mr. Gardner, the complaint also named two other defendants—the insurer that was paying the pension and the unincarcerated individual who actually was receiving the checks.

[2] The State Correctional Facility Reimbursement Act was originally enacted as 1935 PA 253. It was rewritten by 1984 PA 282, and amended further by 1996 PA 286.

At a March 1992 hearing, an assistant attorney general asked the court for an award of ninety percent of the defendant's prison account (which was said to have grown to about $4,000). She also sought ninety percent of the defendant's accrued and future pension benefits.[3] The circuit court agreed, and entered such an order.[4]

On appeal, the defendant raised several objections that the Court of Appeals rejected, including a claim that MCL 600.6023; MSA 27A.6023, which exempts property from levy and sale, precludes execution on his pension. However, a majority of the panel agreed with him that the garnishment subchapter of the federal Consumer Credit Protection Act limited the amount that the state could take. 15 USC 1671 *et seq.*

The Court of Appeals majority thus remanded the case for modification of the reimbursement order, to provide that the State Treasurer would be entitled only to sixty percent of the defendant's accrued and future disability pension benefits. 222 Mich App 62; 564 NW2d 51 (1997).[5]

The State Treasurer has applied to this Court for leave to appeal.[6]

---

[3]    Not more than 90% of the value of the assets of the prisoner may be used for purposes of securing costs and reimbursement under this act. [MCL 800.403(3); MSA 28.1703(3).]

[4] The circuit court later denied reconsideration.

[5] Reh den May 8, 1997 (Court of Appeals Docket No. 167791).

[6] The defendant died in June 1997. On his behalf, Prison Legal Services of Michigan has filed a motion to dismiss, citing *People v Peters*, 449 Mich 515; 537 NW2d 160 (1995). We deny the motion in this civil case because the assets and liabilities of the defendant's estate may remain at issue. The State Treasurer has filed a motion for peremptory reversal, which we are granting for the reasons stated in this opinion.

II

Analyzing the federal Consumer Credit Protection Act,[7] the Court of Appeals majority noted the broadly

---

[7] The key section reads:

(a) . . . Except as provided in subsection (b) of this section and in [15 USC 1675], the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed

(1) 25 per centum of his disposable earnings for that week, or

(2) the amount by which his disposable earnings for that week exceed thirty times the Federal minimum hourly wage prescribed by [29 USC 206(a)(1)] in effect at the time the earnings are payable,

whichever is less. In the case of earnings for any pay period other than a week, the Secretary of Labor shall by regulation prescribe a multiple of the Federal minimum hourly wage equivalent in effect to that set forth in paragraph (2).

(b) . . . (1) The restrictions of subsection (a) of this section do not apply in the case of

(A) any order for the support of any person issued by a court of competent jurisdiction or in accordance with an administrative procedure, which is established by State law, which affords substantial due process, and which is subject to judicial review.

(B) any order of any court of the United States having jurisdiction over cases under [11 USC 1301 *et seq.*].

(C) any debt due for any State or Federal tax.

(2) The maximum part of the aggregate disposable earnings of an individual for any workweek which is subject to garnishment to enforce any order for the support of any person shall not exceed—

(A) where such individual is supporting his spouse or dependent child (other than a spouse or child with respect to whose support such order is used), 50 per centum of such individual's disposable earnings for that week; and

(B) where such individual is not supporting such a spouse or dependent child described in clause (A), 60 per centum of such individual's disposable earnings for that week;

except that, with respect to the disposable earnings of any individual for any workweek, the 50 per centum specified in clause (A) shall be deemed to be 55 per centum and the 60 per centum specified in clause (B) shall be deemed to be 65 per centum, if and to the extent that such earnings are subject to garnishment to enforce a support order with respect to a period which is prior to the twelve-week period which ends with the beginning of such workweek.

worded definitions of "garnishment"[8] and "earnings."[9] 222 Mich App 70. The Court likewise offered a broad construction to the statutory phrase, "any order for the support of any person,"[10] so that the imprisoned defendant was deemed to be a person whose support had been ordered.

The Court of Appeals therefore concluded that the reimbursement order constituted an order that garnished earnings for the support of a person. Accordingly, it applied the sixty-percent limit set forth in 15 USC 1673(b)(2)(B). 222 Mich App 69-72.

Dissenting from the imposition of the sixty-percent limit, Judge M. RICHARD KNOBLOCK would have found the federal statute inapplicable on the ground that Congress enacted the statute to protect a different class of persons. 222 Mich App 72-73.

III

As noted by Judge KNOBLOCK, the purpose of the federal statute is set forth in 15 USC 1671:

(a) . . . The Congress finds:
(1) The unrestrictive garnishment of compensation due for personal services encourages the making of predatory

---

(c) . . . No court of the United States or any State, and no State (or officer or agency thereof), may make, execute, or enforce any order or process in violation of this section. [15 USC 1673.]

[8]    The term "garnishment" means any legal or equitable procedure through which the earnings of any individual are required to be withheld for payment of any debt. [15 USC 1672(c).]

[9]    The term "earnings" means compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program. [15 USC 1672(a).]

[10]   15 USC 1673(b)(2).

extensions of credit. Such extensions of credit divert money into excessive credit payments and thereby hinder the production and flow of goods in interstate commerce.

(2) The application of garnishment as a creditor's remedy frequently results in loss of employment by the debtor, and the resulting disruption of employment, production, and consumption constitutes a substantial burden on interstate commerce.

(3) The great disparities among the laws of the several States relating to garnishment have, in effect, destroyed the uniformity of the bankruptcy laws and frustrated the purposes thereof in many areas of the country.

(b) . . . On the basis of the findings stated in subsection (a) of this section, the Congress determines that the provisions of this subchapter are necessary and proper for the purpose of carrying into execution the powers of the Congress to regulate commerce and to establish uniform bankruptcy laws.

The United States Supreme Court examined the federal statute in *Kokoszka v Belford*, 417 US 642, 650-651; 94 S Ct 2431; 41 L Ed 2d 374 (1974), in an effort to determine whether it affected the right of a bankruptcy trustee to take possession of an income tax refund. The Court's discussion is well capsulized in this sentence:

There is every indication that Congress, in an effort to avoid the necessity of bankruptcy, sought to regulate garnishment in its usual sense as a levy on periodic payments of compensation needed to support the wage earner and his family on a week-to-week, month-to-month basis. [417 US 651.]

It is thus apparent that the statute reflects Congress' intention that "predatory extensions of credit" and similar commercial practices not drive debtors into bankruptcy. By limiting the amount that can be

garnished from a person's earnings, Congress sought to allow a debtor the means to avoid falling further behind.

The present case, by contrast, involves a prisoner who is properly required to compensate the citizenry for the cost of incarceration. He is not the victim of a debtor-creditor relationship gone bad. Rather, he is simply paying a portion of his current living expenses.

This point was made in *State Treasurer v Schuster*, 456 Mich 408; 572 NW2d 628 (1998), where we found that the State Correctional Facility Reimbursement Act takes priority over a nonassignment provision in the Public School Employees Retirement Act. MCL 38.1346(1); MSA 15.893(156)(1). There, we explained that "the state, when considering pension payments according to the reimbursement act, is not a 'creditor,' nor is the relationship between a prisoner and the state a typical debtor-creditor relationship." 456 Mich 419.

Research has produced no case in which a federal court[11] or a state court has invoked the federal statute to limit the public right to recover the current cost of providing room, board, supervision, and care to a

---

[11] In *United States v Porter*, 90 F3d 64 (CA 2, 1996), the defendant pleaded guilty of wire fraud in violation of 18 USC 1343. The loss to the government was $170,080. She was ordered to pay $169,043.21 in restitution, with the repayment obligation initially limited to $25 per month. 90 F3d 65. On appeal, she argued that the restitution order reflected an abuse of discretion in light of current and likely future limitations on her ability to pay. Upholding the restitution order, the court observed that, once her supervised release was ended, the outstanding portion of the restitution order would be enforceable as if it were a civil judgment. In this context, the court included a brief citation to 15 USC 1671-1673 as a measure insulating a debtor from excessive garnishment. 90 F3d 70. The Second Circuit's decision in *Porter* is not inconsistent with the conclusion we reach today in the present case.

prisoner. We are satisfied that this case is governed by the state statute alone.

For these reasons, we reverse the judgment of the Court of Appeals and reinstate the judgment of the circuit court. MCR 7.302(F)(1).

MALLETT, C.J., and BRICKLEY, CAVANAGH, BOYLE, WEAVER, and TAYLOR, JJ., concurred.

KELLY, J., took no part in the decision of this case.