Per Curiam.
Respondent appeals as of right from an order of the Genesee Circuit Court finding that the profit-sharing payments and recognition award payments made to General Motors’ employees were not “earnings,” as that term is used in subchapter II of the Consumer Credit Protection Act (ccpa), 15 USC 1671-1677. Petitioner cross appeals from the circuit court’s order finding that the special payment/signing bonus payments were “earnings” for the purposes of the CCPA. We affirm.
The instant case arose when petitioner attempted to collect child support arrearages from certain employees of respondent by attempting to garnish the total amount of three lump-sum payments made by respondent to its employees. In March 1996, respondent made profit-sharing payments to its salaried and hourly employees in the amount of $800. In December 1996, respondent gave a “special payment” or “signing bonus” to eligible employees in the amount of $2,000. In June 1997, respondent made lump-sum payments to certain salaried employees in the form of recognition awards. The amount of the recognition awards varied.
Petitioner sought to garnish the total amount of such payments made to employees with child support arrearages in Genesee County, and sent income-withholding orders to respondent with respect to those employees. Thereafter, respondent notified petitioner that it would not withhold the full amount of the payments, but would withhold only fifty percent of the payments on the ground that garnishment of the payments was limited to fifty percent under the CCPA. Petitioner filed petitions for an order requiring respondent to show cause with respect to its failure *355 to comply with the income-withholding orders. After hearings regarding the petitions, the circuit court concluded that the profit-sharing payments and the recognition award payments were not “earnings” as that term is used in the CCPA and, thus, the garnishment of those payments was not limited by the CCPA. The court further concluded that the special payments/signing bonuses did constitute “earnings” under the CCPA and, therefore, respondent properly withheld only fifty percent of such payments pursuant to the CCPA.
On appeal, we are asked to decide whether the trial court correctly concluded that the profit-sharing and recognition award payments were not earnings under the CCPA, and that the special payment/signing bonus payments were earnings under the CCPA. Whether the payments were “earnings” for the purposes of the CCPA is a question of statutory interpretation, which we review de novo. Lane v KinderCare Learning Centers, Inc, 231 Mich App 689, 695; 588 NW2d 715 (1998).
The primary goal of judicial interpretation of statutes is to give effect to the intent of the Legislature. Farrington v Total Petroleum, Inc, 442 Mich 201, 212; 501 NW2d 76 (1993). The first criterion in determining legislative intent is the specific language of the statute. House Speaker v State Administrative Bd, 441 Mich 547, 567; 495 NW2d 539 (1993). If the language is clear and unambiguous, judicial construction normally is not permitted. Yaldo v North Pointe Ins Co, 457 Mich 341, 346; 578 NW2d 274 (1998). However, if reasonable minds can differ regarding the meaning of the statute, judicial construction is appropriate. Id.
*356 The Support and Parenting Time Enforcement Act (SPTEA), MCL 552.601 et seq.] MSA 25.164(1) et seq., authorizes the circuit courts to order income withholding for support arrearages. MCL 552.604; MSA 25.164(4), MCL 552.607; MSA 25.164(7). The act defines income as:
(i) Commissions, earnings, salaries, wages, and other income due or to be due in the future to an individual from his or her employer and successor employers.
(ii) A payment due or to be due in the future to an individual from a profit-sharing plan, a pension plan, an insurance contract, an annuity, social security, unemployment compensation, supplemental unemployment benefits, or worker’s compensation.
(Hi) An amount of money that is due to an individual as a debt of another individual, partnership, association, or private or public corporation, the United States or a federal agency, this state or a political subdivision of this state, another state or a political subdivision of another state, or another legal entity that is indebted to the individual. [MCL 552.602®; MSA 25.164(2)®.]
The three payments at issue fall within the sptea’s broad definition of “income.” Thus, the circuit court had the authority to issue income-withholding orders with respect to the payments. MCL 552.604; MSA 25.164(4), MCL 552.607; MSA 25.164(7). However, the total amount of income withheld under the act “shall not exceed the maximum amount permitted under section 303(b) of title III of the consumer credit protection act . . . 15 USC 1673.” MCL 552.608; MSA 25.164(8). The CCPA seeks to limit the garnishment of an individual’s aggregate disposable earnings for any workweek for the enforcement of a support order:
*357 The maximum part of the aggregate disposable earnings of an individual for any workweek which is subject to garnishment to enforce any order for the support of any person shall not exceed -
(A) where such individual is supporting his spouse or dependent child (other than a spouse or child with respect to whose support such order is used), 50 per centum of such individual’s disposable earnings for that week; and
(B) where such individual is not supporting such a spouse or dependent child described in clause (A), 60 per centum of such individual’s disposable earnings for that week. [15 USC 1673(2).]
The purpose of the limitation on garnishment is to prevent “predatory extensions of credit” and similar commercial practices from driving debtors into bankruptcy. State Treasurer v Gardner, 459 Mich 1, 6; 583 NW2d 687 (1998). “By limiting the amount that can be garnished from a person’s earnings, Congress sought to allow a debtor the means to avoid falling further behind.” Id. at 6-7.
The ccpa defines “earnings” as “compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program.” 15 USC 1672(a). The United States Supreme Court discussed the meaning of “earnings” with respect to the CCPA in Kokoszka v Belford, 417 US 642, 651; 94 S Ct 2431; 41 L Ed 2d 374 (1974). In Kokoszka, in determining that an income tax refund did not constitute earnings under the ccpa, the Court explained that the definition of “earnings” is “limited to ‘periodic payments of compensation and [does] not pertain to every asset that is traceable in some way to such compensation.’ ” Id., quoting In re Kokoszka, 479 F2d 990, 997 (CA 2, 1973). The Court *358 noted that its interpretation was supported by the legislative history of the CCPA:
There is every indication that Congress, in an effort to avoid the necessity of bankruptcy, sought to regulate garnishment in its usual sense as a levy on periodic payments of compensation needed to support the wage earner and his family on a week-to-week, month-to-month basis. [417 US 651.]
Having considered the Kokoszka Court’s interpretation, we conclude that the circuit court correctly determined that the profit-sharing payments were not earnings. The profit-sharing payments were lump-sum payments made to employees once a year if respondent earned a profit. The amount of the profit-sharing payments depended on the amount of profit made by respondent. The payments were not discretionary in that, if respondent made a profit, the payments were required to be made. However, because the payments depended on respondent’s profits, the employees could not depend on receiving a certain amount, or any amount at all. Accordingly, an employee could not depend on the profit-sharing payment to meet basic needs on a week-to-week, month-to-month basis. Thus, because allowing garnishment of the entire amount of the profit-sharing payments would not place the type of hardship on the employees that the CCPA seeks to avoid, Funk v Utah State Tax Comm, 839 P2d 818, 821 (1992), we conclude that the profit-sharing payments were not “earnings” for the purposes of the CCPA.
Similarly, we conclude that the circuit court correctly found that the recognition awards did not constitute “earnings.” The recognition awards were discretionary lump-sum payments made to certain sala *359 ried employees. The awards were intended to recognize an employee’s past contributions and to encourage future efforts. No employee was guaranteed a recognition award. The employees that received a recognition award did not know the amount of the award in advance. Therefore, like the profit-sharing payments, the employees could not have relied on the awards to support themselves or their families on a week-to-week, month-to-month basis. Kokoszka, supra. Accordingly, the circuit court correctly determined that the recognition awards were not earnings subject to the CCPA’s limitations on garnishment.
We further agree with the trial court’s finding that the special payments/signing bonuses were “earnings.” We first note that the fact that the payment is termed a “bonus” is of little significance. When determining whether a payment constitutes “earnings” under the ccpa, courts should ignore the label given to the payment. Gerry Elson Agency, Inc v Muck, 509 SW2d 750, 753 (Mo App, 1974). However, other facts indicate that the payments were earnings. The $2,000 payments were not discretionary, but were required to be made pursuant to a collective bargaining agreement. Unlike the profit-sharing payments and the recognition awards, it was certain that the employees would receive the bonuses pursuant to the collective bargaining agreement, and the amount of the bonuses was set. Furthermore, although the payments were made in a' lump sum, they were part of a three-year increase in the employees’ base wage. Thus, we believe the payments were the type the CCPA sought to protect. We therefore conclude that the circuit court correctly determined that the special pay *360 ments/signing bonuses were earnings that could be garnished only to the extent allowed under the CCPA.
Affirmed.
Markman, J, did not participate.