**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED MAY 15, 2001**

GENESEE COUNTY FRIEND OF THE
COURT,

    Petitioner-Appellee,

v                                  No. 115856

GENERAL MOTORS CORPORATION,

    Respondent-Appellant.

_____

GENESEE COUNTY FRIEND OF THE
COURT,

    Petitioner-Appellant,

v                                  No. 115862

GENERAL MOTORS CORPORATION,

    Respondent-Appellee.

_____

PER CURIAM

    The issue in this case is whether certain categories of payments made by General Motors to its employees constitute "earnings" within the meaning of the federal Consumer Credit

Protection Act (CCPA). 15 USC 1672(a). If so, they are subject to a limitation on the amount that may be captured by income withholding orders under the Support and Parenting Time Enforcement Act.[1] The lower courts have held that two types of payments, profit-sharing payments and "recognition awards," were not earnings under § 1672(a), but that "signing bonus" payments were.

We conclude that all three categories of payments constitute earnings and are subject to the federal limitations on income withholding orders. Therefore, we reverse the judgments of the Court of Appeals and the circuit court in part.

I

Statutory Framework

The Support and Parenting Time Enforcement Act (SPTEA) provides for income withholding orders to enforce support orders entered in domestic relations and paternity actions. The friend of the court is given various responsibilities for enforcement of those income withholding orders.

The act defines "income" as follows:

(i) Commissions, earnings, salaries, wages, and other income due or to be due in the future to an individual from his or her employer and successor employers.

(ii) A payment due or to be due in the future to an individual from a profit-sharing plan, a pension plan, an insurance contract, an annuity,

---

[1] MCL 552.601 *et seq.*; MSA 25.164(1) *et seq.*

2

social security, unemployment compensation, supplemental unemployment benefits, or worker's compensation.

(iii) An amount of money that is due to an individual as a debt of another individual, partnership, association, or private or public corporation, the United States or a federal agency, this state or a political subdivision of this state, another state or a political subdivision of another state, or another legal entity that is indebted to the individual. [MCL 552.602(j); MSA 25.164(2)(j)].

In addition, the act incorporates federal law with regard to the maximum percentage that may be withheld. MCL 552.608; MSA 25.164(8) provides:

The total amount of income withheld under this act under all orders to withhold income for current support, past due support, fees, and health care coverage premiums effective against a payer shall not exceed the maximum amount permitted under section 303(b) of title III of the consumer credit protection act, Public Law 90-321, 15 USC 1673.

15 USC 1673(b) sets those limits as follows:

(2) The maximum part of the aggregate disposable earnings of an individual for any workweek which is subject to garnishment to enforce any order for the support of any person shall not exceed—

(A) where such individual is supporting his spouse or dependent child (other than a spouse or child with respect to whose support such order is used), 50 per centum of such individual's disposable earnings for that week; and

(B) where such individual is not supporting such a spouse or dependent child described in clause (A), 60 per centum of such individual's disposal earnings for that week;

except that, with respect to the disposable earnings of any individual for any workweek, the 50 per centum specified in clause (A) shall be deemed to be 55 per centum and the 60 per centum specified

in clause (B) shall be deemed to be 65 per centum, if and to the extent that such earnings are subject to garnishment to enforce a support order with respect to a period which is prior to the twelve-week period which ends with the beginning of such workweek.

Of critical importance to this appeal is 15 USC 1672(a), which includes the definition of "earnings":

The term "earnings" means compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program.

Thus, if the payments in question constitute "earnings" under the federal statute, they are subject to the percentage limitations in that statute. If they are not "earnings," they are still "income" under the Michigan statute, and the entire amount of the payments may be captured to pay support arrearages.

II

General Motors' Payments to Employees

As noted earlier, three categories of payments are involved in this case: profit-sharing, recognition awards, and signing bonuses.

The GM profit-sharing plan has been part of its collective bargaining agreement with the United Auto Workers for a number of years. The agreement establishes a formula by which a portion of GM's profits is allocated to the profit-sharing plan. An eligible employee's profit share is determined by a two-part formula. The profit-sharing rate per

4

hour is determined by dividing the total profit-sharing amount by the total eligible compensated hours for all eligible employees. Second, an individual employee's profit share is calculated by multiplying the profit-sharing rate per hour by the individual employee's eligible compensated hours up to a maximum of 1,850 hours per year. Payment is made once a year in the employee's regular payroll check.

The second type of payment was a December 1996 "signing bonus." As a result of the collective bargaining negotiations between GM and the UAW in the fall of 1996, GM agreed to provide a payment of $2,000 to each eligible employee. Under that agreement, each eligible employee would receive a payment of $2,000 in the employee's regular payroll check in December 1996. During subsequent years of the agreement, employees were to receive a three percent general increase in their base wages.

The third category was the June 1997 "recognition award" payments that GM made to certain salaried employees. An affidavit submitted by GM established that under its compensation program GM created a single fund from which both base salary increases and the recognition award payments were made. The various compensation planning units at GM determined the appropriate mix between base salary increases and the recognition awards for their eligible employees. In doing so, a market rate salary administration system was used to determine comparable salaries for various job positions in

5

the industry.  All other factors being equal, employees with salaries below the market rate would normally receive larger increases in their base pay to bring their compensation level closer to the market rate.  Employees with salaries above the market rate would normally receive smaller base rate increases since their current pay is already high in relationship to the market.  Under market rate salary administration, recognition awards are a separate element of pay considered independently from base salary increases.  A significant recognition award might be appropriate for an employee who will not receive a base salary increase because the employee's salary is already well placed in the salary range.

III

Circuit Court Proceedings

In late January 1996, GM notified the Genesee friend of the court (and similar agencies elsewhere) that the profit sharing payments would be made on about March 15, 1996.  As a result, the friend of the court obtained from six of the seven Genesee circuit judges[2] amended income withholding orders directing GM to withhold from each of the listed employees' checks the amount corresponding to the arrearage listed.[3]

---

[2] The friend of the court represents that one of the circuit judges had historically refused to issue such amended support orders, and the friend of the court did not make the request of that judge.

[3] The orders signed by each judge were entitled "In the Matter of General Motors Employees Lump-Sum Profit Sharing Payment," and were accompanied by lists of GM employees who

Upon receipt of the amended income withholding orders, GM deducted from the employees' payments amounts required to be withheld by law such as taxes and social security withholding. Believing that these payments were subject to the federal percentage limits on garnishment, GM paid to the friend of the court fifty percent of the remaining disposable earnings.[4]

A similar procedure was followed regarding the signing bonus payments. GM notified the friend of the court in November 1996 that such payments would be made in mid-December 1996. Orders were entered by the various circuit judges about November 20, 1996, directing withholding from the special payment checks the amounts of the arrearages listed. As with the profit-sharing payments, GM withheld only fifty percent of disposable earnings.

There were apparently discussions between the parties about the dispute. When they were unable to resolve their differences, the friend of the court filed a petition with one of the circuit judges, the Honorable Judith A. Fullerton, seeking enforcement of the February and November 1996 amended income withholding orders. Judge Fullerton issued an order to show cause directed to GM on February 4, 1997. GM responded to the order to show cause, arguing that the two categories of

_____

were in arrears on payments in cases assigned to that judge.

[4] As the quotation from the statute set forth earlier indicates, the actual percentage limits are a bit more complicated, but the details are not important for the purposes of this appeal.

7

payments were "earnings" under the CCPA, and thus subject to its limits on the amounts that may be withheld for support orders.

There was a hearing on May 5, 1997. Judge Fullerton ruled that the profit-sharing payments were not "earnings" as that term is used in the CCPA, and thus the percentage limitations did not apply. However, she concluded that the signing bonuses did constitute "earnings" under the federal statute, and therefore GM properly withheld only fifty percent of such payments.

At about the same time, the friend of the court became aware of the pending recognition award payments, to be made about June 13, 1997, and obtained additional amended income withholding orders in early May 1997. On May 22, 1997, GM notified the friend of the court that recognition awards were being made to certain employees who were listed on the amended withholding orders, and that GM was withholding fifty percent of the disposable income of those employees pursuant to the order.

At the request of the friend of the court, Judge Fullerton issued a June 10, 1997, order enjoining GM from distributing any portion of the recognition award payments to be made June 13, 1997, and later issued an order to show cause why one hundred percent of the recognition awards were not paid to the friend of the court. A hearing was held on August 11, 1997, and Judge Fullerton ruled that the

8

recognition award payments were not earnings, and therefore were not protected by the CCPA percentage limitations on support collections. GM had filed a motion for reconsideration of the May 5 decision regarding the profit-sharing payments. It was denied at the same August 11 hearing. On August 27, 1997, Judge Fullerton entered an order incorporating both the denial of reconsideration of the decision on the profit-sharing payments and the ruling that the recognition awards were not "earnings."

GM filed a claim of appeal in the Court of Appeals, and the friend of the court cross-appealed.

IV

Court of Appeals Decision

The Court of Appeals noted that the three payments in issue fall within the SPTEA's broad definition of "income." Thus, the panel held, the circuit court properly issued income support orders with respect to the payments. However, that left the question of the effect of the federal statute. After reviewing the statutory language, the Court examined the United States Supreme Court's discussion of the meaning of "earnings" in *Kokoszka v Belford*, 417 US 642, 651; 94 S Ct 2431; 41 L Ed 2d 374 (1974). In that case, the Court determined that an income tax refund did not constitute earnings under the CCPA. The Court explained that earnings are "limited to 'periodic payment of compensation and [do] not pertain to every asset that is traceable in some way to such

9

compensation.'" 417 US 651. The U.S. Supreme Court saw this interpretation as supported by the legislative history of the federal act:

> There is every indication that Congress, in an effort to avoid the necessity of bankruptcy, sought to regulate garnishment in its usual sense as a levy on periodic payments of compensation needed to support the wage earner and his family on a week-to-week, month-to-month basis. [*Id.*]

The Court of Appeals first examined the profit-sharing payments, finding them not to be earnings. It explained:

> The payments were not discretionary in that, if respondent made a profit, the payments were required to be made. However, because the payments depended on respondent's profits, the employees could not depend on receiving a certain amount, or any amount at all. Accordingly, an employee could not depend on the profit-sharing payment to meet basic needs on a week-to-week, month-to-month basis. Thus, because allowing garnishment of the entire amount of the profit-sharing payments would not place the type of hardship on the employees that the CCPA seeks to avoid, *Funk v Utah State Tax Comm*, 839 P2d 818, 821 (1992), we conclude that the profit-sharing payments were not "earnings" for the purposes of the CCPA. [238 Mich App 352, 358; 605 NW2d 349 (1999).]

The Court of Appeals offered similar reasoning regarding the recognition awards, finding them not to constitute earnings:

> The recognition awards were discretionary lump-sum payments made to certain salaried employees. The awards were intended to recognize an employee's past contributions and to encourage future efforts. No employee was guaranteed a recognition award. The employees that received a recognition award did not know the amount of the award in advance. Therefore, like the profit-sharing payments, the employees could not have relied on the awards to support themselves or their families on a week-to-week, month-to-month

10

basis.  [238 Mich App 358-359.]

However, the Court of Appeals found that the signing bonuses were earnings.  It noted that the use of the term "bonus" was of little significance, and that one should look at the actual substance of the payment rather than the label. *Gerry Elson Agency, Inc v Muck*, 509 SW2d 750, 753 (Mo App, 1974).  In the Court's view, other facts indicated that the payments were earnings:

> The $2,000 payments were not discretionary, but were required to be made pursuant to a collective bargaining agreement.  Unlike the profit-sharing payments and the recognition awards, it was certain that the employees would receive the bonuses pursuant to the collective bargaining agreement, and the amount of the bonuses was set. Furthermore, although the payments were made in a lump sum, they were part of a three-year increase in the employees' base wage.  Thus, we believe the payments were the type the CCPA sought to protect. [38 Mich App 359.]

GM and the friend of the court have filed separate applications for leave to appeal.[5]

V

Standard of Review

This case involves a question of statutory interpretation, which we review de novo.  *Brown v Michigan Health Care Corp*, 463 Mich 368, 374; 617 NW2d 301 (2000); *Sands Appliance Services, Inc v Wilson*, 463 Mich 231, 238; 615 NW2d 241 (2000).

---

[5] The Michigan Manufacturers Association filed a motion for leave to file a brief as amicus curiae in support of GM's application.  That motion is granted.

11

VI

Are Payments "Earnings"?

There is no dispute that the three categories of payments constitute "income" for the purpose of the Michigan statute, making them subject to income withholding orders to enforce support obligations. The only question is whether the payments are "earnings" under the federal CCPA and thus are subject to its limitations on the maximum amount that may be reached to enforce the support obligations.

In finding that the profit-sharing and recognition award payments did not constitute "earnings," the Court of Appeals focused on the facts that the payments were made as lump sums and that the amounts were uncertain, making it difficult for employees to depend on them to meet basic needs week to week and month to month.[6] However, this reasoning is inconsistent with the plain language of 15 USC 1672(a):

> The term "earnings" means compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program.

The reference to periodic payments does not apply to the definition as a whole. Periodic payments are only mentioned in connection with pension or retirement programs, presumably to distinguish such payments from lump sum distributions from

_____

[6] With regard to the recognition awards, the Court of Appeals also noted that the payments were made at the discretion of the employer.

pension or retirement plans. The inclusion of "bonus" in the definition of earnings clearly negates the suggestion that periodic payment is required. Bonuses are typically sporadic, irregular, unpredictable, and discretionary payments by the employer. See, e.g., *Hunt v City of Markham*, 219 F3d 649, 654 (CA 7, 2000); *Perri v Perri*, 682 NE2d 579, 580 (Ind App, 1991).[7]

The Court of Appeals failed to focus on the general definition—earnings are "compensation paid or payable for personal services." GM's description of the payments in question was undisputed. The profit-sharing payments for many years had been a part of the collective bargaining agreement with the labor union representing GM hourly employees. The affidavit submitted by GM explaining the nature of the recognition award payments makes clear that the fund from which such payments are made is a regular part of GM's

---

[7] The Court of Appeals reliance on language in *Kokoszka, supra*, is misplaced. In that decision the Court was principally concerned with the interaction between the Consumer Credit Protection Act and the bankruptcy laws. The Court held that the CCPA's limitations on wage garnishment do not restrict the right of a trustee in bankruptcy to treat the income tax refund as property of the bankrupt's estate. The discussion about periodic payments is not an analysis of the language of the statute, but rather of the general legislative purposes behind the CCPA. As demonstrated below, the plain language of the statute establishes that these payments are "earnings," whether or not they are made as periodic payments. The language of *Kokoszka* is not on point and unnecessary to the resolution of that case. Absent clear contrary precedent, our interpretation of the CCPA is to be guided by the statute's unambiguous language.

compensation scheme for salaried employees. The choice between making recognition award payments and awarding raises was based on a variety of competitive factors involving employee pay levels and pay scales in comparable industries, but the payments are unquestionably compensation for personal services.[8]

The fact that the amounts of the payments are not known in advance and, in the case of the recognition awards, are subject to the discretion of management, does not change the character of the payments. The statutory definition of "earnings" specifically includes commissions and bonuses, which are similarly less predictable than hourly or weekly wages or salaries and, in the case of bonuses, are subject to management discretion.[9]

---

[8] There are relatively few cases interpreting the federal statute. However, they illustrate that the question is whether the payment is compensation for services. Compare *Kokoszka v Belford, supra* (income tax refund did not constitute earnings), and *Pallante v Int'l Venture Investments, Ltd*, 622 F Supp 667 (ND Ohio, 1985) (severance pay not earnings), with *East Hartford Bd of Ed v Booth*, 232 Conn 216; 654 A2d 717 (1995) (accrued sick leave and deferred compensation are "earnings," under Connecticut statute similar to federal CCPA), and *Riley v Kessler*, 2 Ohio Misc 2d 4; 441 NE2d 638 (1982) (vacation pay constitutes "earnings"). One unpublished decision of the Ohio Court of Appeals has held that profit-sharing payments constitute earnings under § 1672(a). *Ighnat v Ighnat*, 1989 WL 34733.

[9] In addition, the Court of Appeals drew an unwarranted distinction when it treated the signing bonuses differently from the profit-sharing payments. The Court distinguished signing bonuses on the ground that they were not discretionary. However, the profit-sharing payments also were not discretionary. If GM had a profit, the employees were

Thus, we conclude that all three categories of payments constitute "earnings" under 15 USC 1672(a). We therefore reverse the judgments of the Court of Appeals and the Genesee Circuit Court in part, and remand this case to the circuit court for further proceedings consistent with this opinion.

CORRIGAN, C.J., and CAVANAGH, WEAVER, KELLY, TAYLOR, YOUNG, and MARKMAN, JJ., concurred.

---

entitled to the payments under the collective bargaining agreement.