TAYLOR, C.J.
We granted leave in this case to determine whether plaintiff, Ricky Reed, who was fired from defendant Mr. Food, Inc., but continued to assist with deliveries on a periodic basis, was an employee of Mr. Food within the meaning of MCL 418.161(1)(Z) and (n) of the Worker’s Disability Compensation Act (WDCA)[1] and, thus, prohibited from maintaining a tort action for employment-related personal injury in the circuit court against Mr. Food, its owner, and its delivery supervisor. We determine that Reed was an employee of Mr. Food under MCL 418.161(1)(Z) at the time he was injured because he was in the service of Mr. Food under a contract for hire. We therefore affirm the decision of the Court of Appeals in part. However, we further determine that Reed was an employee of Mr. Food under MCL 418.161(l)(n) at the time he was injured because he was performing a service as a deliveryman for Mr. Food in the course of its business and did not maintain a separate business offering that service, hold himself out to and render that service to the public, or qualify as an employer subject to the WDCA. We therefore reverse the decision of the Court of Appeals in part and remand this case to the circuit court for entry of a directed *523 verdict in defendants’ favor. Jurisdiction is thereafter transferred to the Bureau of Worker’s Disability Compensation.
FACTS AND PROCEDURAL HISTORY
Defendant Gerald Michael Herskovitz is the owner of defendant Mr. Food, Inc., which is a retail marketer of meat products. Defendant Buddy Lee Hadley is an employee of Mr. Food and is in charge of its meat deliveries. In 1997, Hadley suggested that Herskovitz hire Reed, whom Hadley had known for approximately ten years, and Herskovitz did so. Herskovitz was not pleased with Reed’s performance, however, and fired Reed after a period of only five or six months in December 1997.
After being fired by Herskovitz, Reed primarily supported himself by painting his relatives’ homes. But, Reed’s association with Mr. Food did not end completely after he was fired, and he supplemented his income by occasionally helping Hadley with deliveries. Specifically, Hadley testified that, on approximately three to five occasions after Reed was fired near the end of 1997, he would hire Reed to help with his deliveries for the day,, for which Reed would be paid between $35 and $40 in cash. Although Herskovitz authorized Hadley to obtain help with his deliveries on these days, he testified that he did not know that it was Reed that Hadley actually hired.
On May 7, 1998, during one of these days that deliveries were being made, Reed was riding in a cargo van owned by Mr. Food that was being driven by Hadley. As the van approached an intersection, a car driven by Linda Yackell did not stop at a red light because her brakes malfunctioned. Hadley, who was looking down at *524 paperwork, did not see Yackell’s car in time and hit her car. Reed suffered a closed head injury as a result of the accident.
On December 10, 1998, Reed filed a complaint in the circuit court, alleging negligence by the drivers, Hadley and Yackell, liability by Herskovitz pursuant to the owner’s liability statute, MCL 257.401, and liability by Mr. Food under the theory of > respondeat superior. Hadley, Herskovitz, and Mr. Food (defendants)[2] as relevant to this appeal, defended by asserting that the suit was barred because Reed was an employee of Mr. Food under MCL 418.161(1)(Z) and (n)[3] and, thus, his exclusive remedy was under the WDCA.[4] During trial, defendants moved for a directed verdict on this basis. Reed countered that he was not an employee, but was rather an independent contractor of day labor. The trial court *525 denied defendants’ motion. At the end of trial, the jury returned a unanimous verdict in Reed’s favor and awarded him $1,256,320, allocating sixty percent of the fault for the accident to Yackell and forty percent to Herskovitz, Hadley, and Mr. Food collectively. A judgment in the amount of $502,528 was subsequently entered against Hadley, Herskovitz, and Mr. Food.
Defendants thereafter moved for judgment notwithstanding the verdict (JNOV), again asserting that Reed was an employee at the time of the accident. The trial court again denied defendants’ motion, stating that Reed was not an employee of Mr. Food at the time of the accident but was instead an independent contractor that held himself out to the public to perform general labor.
Defendants appealed to the Court of Appeals, which affirmed in an unpublished decision.[5] Defendants then sought leave to appeal in this Court. Pursuant to MCR 7.302(G)(1), in lieu of granting leave to appeal, we vacated the decision of the Court of Appeals and remanded this case to the circuit court with instructions that it determine, either on the existing record or after additional evidentiary hearings, whether Reed was an employee of Mr. Food at the time of the accident. The trial court was also to submit findings of fact to this Court regarding whether Reed was in the service of Mr. Food under either an express or implied contract for hire as set forth in MCL 418.161(1) (Z) and explained in our then-recent decision in Hoste v Shanty Creek Mgt, Inc, 459 Mich 561; 592 NW2d 360 (1999). Further, in order to determine if he was outside the definition of employee in MCL 418.161(1) (n), the trial court was to *526 determine whether Reed both maintained a separate business and held himself out to the public as having such a business.[6]
On remand, the circuit court issued a written order and findings of fact, based on the existing record, stating that Reed was not an employee of Mr. Food at the time of the accident. With respect to MCL 418.161(1)(Z) and Hoste, the trial court determined that Reed was not performing a service for Mr. Food under either an express or implied contract for hire. In reaching this conclusion, the trial court focused on the fact that Herskovitz had fired Reed before the accident, that Herskovitz had testified at trial that he did not know that Reed was helping Hadley at the time of the accident, and that no evidence had been introduced that income taxes had been withheld from Reed or that he had ever claimed employee status. The trial court reasoned that these facts negated the possibility that either an express or implied contract for hire had been formed because both parties were not aware of its existence and had not agreed to its terms. Finally, the trial court determined that Reed was not an employee under a contract “for hire,” reasoning that he did not receive a regular income from Mr. Food but, instead, received only $35 to $40 on three to five occasions. The court concluded that this did not equate to “real, palpable, and substantial consideration” that was intended as wages[7] because, spread over the entire period of about five or six months when the occasional employment took place, it amounted to less than $1 per day.
In considering the questions under MCL 418.161(l)(n), the trial court held that Reed did have a qualifying separate business because he was a house *527 painter performing day labor. The court apparently concluded that there was a sufficient holding of himself out for this service to meet the requirements of MCL 418.161(l)(n). But, the court did not elaborate on the evidence it found to establish that.
After receiving the trial court’s findings of fact, we remanded this case to the Court of Appeals for reconsideration of whether Reed was an employee within the meaning of MCL 418.161(1)(Z) and (n) and, if necessary, of additional issues the Court of Appeals had addressed in its earlier decision.[8]
On remand, in an unpublished decision that echoed the previously vacated one, the Court of Appeals affirmed the trial court’s determination that Reed was not an employee of Mr. Food at the time of the accident.[9] Unlike the circuit court, the Court of Appeals determined that Reed was an employee under MCL 418.161(1)(Z) because he was under a contract for hire. Yet, because he had, in the view of the Court of Appeals, a separate business in which he held himself out for the performance of the same service he was performing for Mr. Food, he was removed from the definition of employee by virtue of MCL 418.161(l)(n). Interestingly, while expressly acknowledging that in Hoste we held that the common-law “economic realities test” for determining whether a worker is an employee or an independent contractor was superseded to the extent that it was inconsistent with MCL 418.161(l)(n),[10] the Court then expressly focused on those same superseded common-law factors (such as how Reed was paid, whether taxes were withheld, whether Mr. Food, Her *528 skovitz, and Hadley had control of Reed’s duties, and whether the services Reed performed were an integral part of Mr. Food’s business) in making its holding regarding whether Reed was an employee. At no point was an effort undertaken to reconcile this approach with the holding in Hoste precluding the consideration of these no longer recognized common-law “economic realities” factors.
Unsurprisingly, defendants again filed an application with this Court for leave to appeal, and we granted defendants’ application limited to the issue whether Reed' was an employee within the meaning of MCL 418.161(1)(Z) and (n) at the time of the accident.[11]
STANDARD OP REVIEW
Defendants’ contention is that the trial court erroneously denied their motions for a directed verdict and JNOV We review a trial court’s denial of both motions de novo. Sniecinski v Blue Cross & Blue Shield of Michigan, 469 Mich 124, 131; 666 NW2d 186 (2003). In doing so, we “ ‘review the evidence and all legitimate inferences in the light most favorable to the nonmoving party.’ ” Id., quoting Wilkinson v Lee, 463 Mich 388, 391; 617 NW2d 305 (2000). Only if the evidence, when viewed in this light, fails to establish a claim as a matter of law should a motion for a directed verdict or JNOV be granted. Id.
This case also involves the interpretation of statutes, which is a question of law that is also reviewed dé novo by this Court. Hoste, supra at 569. Our fundamental obligation when interpreting statutes is “to ascertain the legislative intent that may reasonably be inferred from the words expressed in the statute.” Koontz v *529 Ameritech Services, Inc, 466 Mich 304, 312; 645 NW2d 34 (2002). If the statute is unambiguous, judicial construction is neither required nor permitted. In other words, “[bjecause the proper role of the judiciary is to interpret and not write the law, courts simply lack authority to venture beyond the unambiguous text of a statute.” Id.
DISCUSSION
A. PRINCIPLES OP THE WDCA
As we have discussed frequently in the past, by enacting Michigan’s Worker’s Disability Compensation Act, the Legislature replaced common-law liability for negligence in the workplace, and its related defenses, with a comprehensive, statutory compensation scheme that requires employers to provide compensation to employees for injuries arising out of and in the course of employment without regard to fault. MCL 418.301; Hoste, supra at 570; Clark v United Technologies Automotive, Inc, 459 Mich 681, 686-687; 594 NW2d 447 (1999); Farrell v Dearborn Mfg Co, 416 Mich 267, 274-275; 330 NW2d 397 (1982). In exchange for this almost automatic entitlement to compensation, the WDCA limits the amount of compensation that an employee may collect and, moreover, prohibits the employee from bringing a tort action against the employer except in limited circumstances.[12] This principle is expressed in MCL 418.131(1), which provides, “The right to the recovery of benefits as provided in this act shall be the employee’s exclusive remedy against the employer for a personal injury or occupational disease.” As we have explained:
*530 Th[is] language expresses a fundamental tenet of workers’ compensation statutes that if an injury falls within the coverage of the compensation law, such compensation shall be the employee’s only remedy against the employer or the employer’s insurance carrier. The underlying rationale is that the employer, by agreeing to assume automatic responsibility for all such injuries, protects itself from potentially excessive damage awards rendered against it and that the employee is assured of receiving payment for his injuries. [Farrell, supra at 274.]
Accordingly, the threshold question in this case is whether Reed is an “employee” under any of the definitions in MCL 418.161 of the WDCA and, therefore, has traded his right to bring a tort action for the assured payment of benefits without regard to fault. Hoste, supra at 570-571. As in Hoste, several of the definitions set forth in MCL 418.161 do not apply in this case and, therefore, the resolution of this issue requires us to focus only on subsections 161(1)(Z) and 161(l)(n).[13] As we explained in Hoste, these subsections “must be read together as separate and necessary qualifications in establishing employee status.” Hoste, supra at 573. In other words, our first task is to determine whether Reed was an employee under the definition set forth in subsection 161(1)(Z). If he was, we must then determine whether he meets the requirements of subsection 161(l)(n). Id.
B. ANALYSIS OF MCL 418.161(1)®
Subsection 161(1) (Z) requires us to determine whether Reed was in the service of Mr. Food under any express or implied “contract of hire.” Because it is undisputed that Reed was in the service of Mr. Food at *531 the time of the accident, our determination of this issue requires a two-pronged analysis focusing first on whether Reed was in that service pursuant to an express or implied contractual relationship and, second, as explained in Hoste, supra at 573-577, whether that contractual relationship was one “of hire.”
With regard to the first inquiry, we agree with the Court of Appeals conclusion that the facts in this case are at least sufficient to establish that Reed was in the service of Mr. Pood pursuant to an implied in fact contractual relationship. “ ‘A contract implied in fact arises when services are performed by one who at the time expects compensation from another who expects at the time to pay therefor.’ ” In re Spenger Estate, 341 Mich 491, 493; 67 NW2d 730 (1954), quoting In re Pierson’s Estate, 282 Mich 411, 415; 276 NW 498 (1937). As the Court of Appeals noted, Reed was expecting to be compensated for the services that he performed that day, just as he had been several times before. Moreover, Herskovitz, having told Hadley to obtain the help he needed to make his deliveries that day, expected to compensate whomever Hadley recruited, just as he had done in the past. The defendants argue that the failure of Herskovitz to know exactly who Hadley would hire is relevant to whether there was an implied in fact contract with Reed. This is not the case. All that is required to establish a contract with Reed is that Hadley had authority to hire.[14] Hadley incontestably had that authority.
*532 Accordingly, having determined that the services Reed was performing for Mr. Food were pursuant to an express or implied contractual relationship, our next inquiry is whether that contractual relationship was “of hire.” As we explained in Hoste, supra at 576, the linchpin to determining whether a contract is “of hire” is whether the compensation paid for the service rendered was not merely a gratuity but, rather, “intended as wages, i.e., real, palpable and substantial consideration as would be expected to induce a reasonable person to give up the valuable right of a possible claim against the employer in a tort action and as would be expected to be understood as such by the employer.”
In the present case, the $35 to $40 that Reed received for the approximately eight hours of services he rendered satisfies the requirement we set forth in Hoste. In finding otherwise, the circuit court did not dispute that the wages were real, palpable, and substantial on an hourly basis but, instead, calculated them by averaging them over the entire five- to six-month period of the occasional employment to conclude that the wages were less than one dollar a day. This is a puzzling and even arbitrary approach to this issue of calculation that ignores the parties’ actual contracted for rate of per diem compensation and replaces it with an approach not taken by the parties. In fact, it seems to be without justification other than it effectively serves to reduce the compensation rate by a high multiple. In contrast, when the neutrally derived approach we are adopting is used, examining the actual agreement to determine the unit of pay, it is clear that this compensation was indeed real, palpable, and substantial when measured against the services performed.
Here, Reed provided approximately eight hours of unskilled, manual labor helping Hadley deliver meat *533 products. This was a service that did not require any particular level of skill, education, or experience. Indeed, the testimony at trial concerning Reed’s duties showed only that they consisted of carrying and moving boxes,[15] while even such minimal tasks as handling the paperwork, arranging the delivery schedule, and driving the delivery truck were handled by Hadley. For these eight hours of unskilled, manual labor delivering meat, Reed was paid approximately $35 to $40. Because this was roughly equivalent to the minimum wage rate at the time, it is confounding that a court could conclude that this was not a “real” or “substantial” wage and that it was, instead, as it has to be under the Hoste test, a mere gratuity. We reject, with some impatience, such a counterintuitive conclusion.
It is also appropriate to point out that the circuit court’s ad hoc approach of averaging over the entire period of occasional employment, even though there was no such agreement between the parties, would, were it the law, cause most any occasional worker’s wage to be insubstantial under Hoste, thus making worker’s compensation protections for, say, all persons working episodically on a part-time basis unavailable. The facile answer to this, no doubt, is that such workers will have a tort remedy. But, they probably will not. These injured people will be, simply, injured without a remedy. History shows no less. In fact, the leaders of this state a century ago were painfully familiar with the crushing inequity created by this illusory solution of leaving workers with only a tort remedy. As they made *534 clear in passing our original worker’s compensation law, this tort remedy was hollow because of the fellow servant rule, as well as the difficulty of the worker’s burden of demonstrating, among other things, employer negligence and an absence of contributory negligence on the worker’s part. As the Worker’s Compensation Commission appointed in 1912 by Governor Chase S. Osborn to draft our first “Workmen’s Compensation” law concluded, after examining data regarding the average compensation paid and the wage loss sustained, on average, injured workers did not receive compensation proportionate to their injuries under the common-law, negligence based system. According to the commission, “[t]his low average was, of course, brought about by the large number of accidents to which, there being no negligence on the part of the employer, there was no legal liability to pay damages.”[16] Moreover, the commission concluded that, even in cases where injured workers did procure recovery in the courts, the compensation received was inadequate because of the expense of litigation and attorney fees, and because of the “great delay” that generally occurred between the time of the injury and the final settlement of the action. Indeed, the commission’s examination of the cases that were actually litigated revealed that “the damages for injuries similar in effect and extent were widely variant in amount and were on average less than the compensation proposed under suggested compensation acts.”[17] It is the case then that our courts, rather than straining to devise some too clever reading of the parties’ agreement that has as its end game the allowing of tort claims by a particular injured worker (which formula invariably *535 will be devastating to yet unknown injured workers who, under the new formula, will be unable to secure worker’s compensation), should simply look to the parties’ actual contract to determine the nature of what was actually agreed on and rule accordingly. All of which is to say that we should recall the venerable axiom that hard cases make bad law and not fall into the practice of allowing them to do so.
Therefore, we conclude that Reed was an employee of Mr. Food at the time of his injuries within the meaning of subsection 161(1)(Z) because the service he performed was pursuant to an expressed or implied contract of hire and the compensation was real and substantial. It was a wage. Accordingly, our next task is to determine whether Reed meets the requirements of subsection 161(l)(n).
C. ANALYSIS OF MCL 418.161(l)(n)
Subsection 161(l)(n) provides that every person performing a service in the course of an employer’s trade, business, profession, or occupation is an employee of that employer. However, the statute continues by excluding from this group any such person who: (1) maintains his or her own business in relation to the service he or she provides the employer, (2) holds himself or herself out to the public to render the same service that he or she performed for the employer, and (3) is himself or herself an employer subject to the WDCA. In other words, subsection 161(l)(n) sets forth three criteria for determining whether a person performing services for an employer qualifies as what is commonly called an “independent contractor” rather than an employee. As we explained in Hoste, these three statutory criteria have superseded the former common-law-based economic realities test for determining *536 whether an individual is an independent contractor to the extent that they differ from the test. Hoste, supra at 572.[18]
In the present case, it is undisputed that Mr. Food, or Herskovitz, is an employer subject to the WDCA and that Reed was performing a service in the course of Mr. Food’s business. We thus turn to the three criteria required for the exception in subsection 161(l)(n): whether Reed, in relation to the service he provided for Mr. Food, (1) maintained a separate business offering the same service, (2) held himself out to and rendered the same service to the public, and (3) is an employer subject to the WDCA.
Reed’s argument, adopted by the Court of Appeals, is that he is an independent contractor because he maintained a separate business and held himself out to the public as a day laborer. Even assuming that Reed had a separate business and held it out to the public, these facts do not establish enough to meet the statutory requirement of subsection 161(l)(n). The first requirement is that the service held out and provided by the separate business be “this service,” i.e., the same service that he performed for the employer. It is not enough under the statute that he has any business and holds it out. The reason is that such a reading fails to *537 give effect to all the words in the statute. This we cannot do because we are bound by oath to give meaning to every word, phrase, and clause in a statute. Said conversely, we cannot render parts of the statute surplusage and nugatory. State Farm Fire & Cas Co v Old Republic Ins Co, 466 Mich 142, 146; 644 NW2d 715 (2002). Yet, it is this the plaintiff requests, and this we cannot grant.
Therefore, contrary to the conclusions of the trial court and the Court of Appeals, the “service” performed by the person cannot be placed in such broad and undefined classifications as general labor. Rather, it must be classified according to the most relevant aspects identifiable to the duties performed in the course of the employer’s trade, business, profession, or occupation.[19] Thus, for example, if the service that the person performs for the employer is roofing, to be an independent contractor and, thus, be ineligible for worker’s compensation, the person must maintain a separate roofing business, which roofing business he holds himself or herself out to the public as performing. Accordingly, in this case where the most Reed can point to is that he was a house painter at times, the tests to take him out of the worker’s compensation system are not met.
We would again caution that the contrary reading of this requirement, as engaged in by the Court of Appeals and the trial court, would inescapably mean that any moonlighting worker, say an industrial worker at General Motors, Ford, or DaimlerChrysler, who has a janitorial service, lawn care business, a Mary Kay distributorship, or even serves as a compensated choir director at her church, would be without worker’s compensation *538 when injured at her day job. This is not what the words of the Legislature allow, and to twist them into saying it is shortsighted in the extreme.
Accordingly, we conclude that Reed is not an independent contractor and is subject to the worker’s compensation system.
SUBJECT-MATTER JURISDICTION
As a final matter, we note that the Workers’ Compensation Section of the State Bar of Michigan has filed a provocative amicus brief. It argues that this Court’s decision in Sewell v Clearing Machine Corp, 419 Mich 56; 347 NW2d 447 (1984), holding that the circuit court shares concurrent jurisdiction with the worker’s compensation adjudicatory system to determine, in the first instance, whether a person was an employee at the time of the person’s injury, is in error. Amicus argues that Const 1963, art 6, § 13[20] and MCL 418.841(1),[21] in tandem, effectively divest the circuit court of subject-matter jurisdiction on this issue and, thus, this case is improperly before us on appeal. Instead, amicus argues, the worker’s compensation system has exclusive jurisdiction to determine this question. Neither party raised or briefed this jurisdictional issue but were asked at oral argument to address it.
Justice CORRIGAN has persuasively argued in her dissent that Sewell was indeed wrongly decided. How *539 ever, we decline to overrule Sewell on this record. Both Justice CORRIGAN and amicus curiae are appropriately critical of the unseemly atmospherics surrounding the Sewell decision: it was decided peremptorily without plenary consideration, briefing, or argument.[22] Appreciative of that criticism of Sewell, we believe it prudent to not replicate it and accordingly decline to overrule Sewell in the same peremptory fashion that it was adopted.
As we have made clear in the past, “[w]e do not lightly overrule precedent.”[23] Indeed, in Robinson v Detroit, 462 Mich 439, 464; 613 NW2d 307 (2000), we discussed several factors to consider before overruling a prior decision. Rather than address the various considerations mentioned in Robinson, the amicus only argues that Sewell was wrongly decided, and the parties do not even address that. We believe this is an unsatisfactory predicate for overruling Sewell, especially when it is debatable whether Sewell was wrongly decided. As plaintiff hurriedly pointed out at oral argument in this case, the relevant language (“all questions arising under this act shall be determined by the bureau or a worker’s compensation magistrate”) may mean that, before deciding any “questions arising under this act,” it is necessary to determine if the cause of action is in tort or worker’s compensation. It is only after that is determined, and if it is determined that it is indeed a worker’s compensation matter, that the bureau’s jurisdiction is exclusive. While Justice CORRIGAN makes a compelling case that this rebuttal argument to the amicus will be found unconvincing upon full consideration, that is not entirely clear at this point. Moreover, *540 even if one assumes that Justice CORRIGAN and amicus curiae’s assertion regarding jurisdiction is the stronger argument, we have had no briefing concerning whether the other stare decisis considerations discussed in Robinson are satisfied in the present case.
Further, while all courts must upon challenge, or even sua sponte, confirm that subject-matter jurisdiction exists,[24] that does not mean that once having done so, as we did in Sewell, that a court must repeatedly reconsider it de novo. Subsequent courts can rely on the earlier determination that has the force of stare decisis behind it. It is that situation that we are in and until a record exists that is full and developed and causes us to question our earlier holding, pursuant to the Robinson tests, we see no justification at present to disturb the Sewell dual jurisdiction holding.
Finally, given the interest this issue of jurisdiction has generated on the Court, we have no doubt it will be presented to us again in the near future. On that occasion, presumably all parties will have a full opportunity to brief and argue this issue, and it may at that time be appropriate to reconsider Sewell.
CONCLUSION
We conclude that Reed was an “employee” of Mr. Food as the Legislature has unambiguously defined that term in MCL 418. 161(1)(Z) and (n). Accordingly, we reverse in part the judgment of the Court of Appeals and remand this case to the circuit court for entry of a directed verdict in defendants’ favor. Jurisdiction over this case is thereafter transferred to the Bureau of *541 Worker’s Disability Compensation. Should Reed desire to pursue a claim for benefits under the WDCA, he shall present an appropriate claim for compensation to the bureau no later than thirty days after the date this opinion is issued. For the purposes of MCL 418.381(1),[25] the bureau shall treat Reed’s claim for benefits as having been filed on December 10, 1998, the date he filed his complaint in the circuit court.
YOUNG and MARKMAN, JJ., concurred with TAYLOR C.J.
CAVANAGH and KELLY, JJ., concurred in the result only.

 MCL 418.101 et seq.

 Yackell is not a party to the proceedings in this Court. Therefore, we will hereinafter use the term “defendants” in reference to Herskovitz, Hadley, and Mr. Food collectively.

 MCL 418.161 provides:
(1) As used in this act, “employee” means:
(l) Every person in the service of another, under any contract of hire, express or implied, including aliens ....
(n) Every person performing service in the course of the trade, business, profession, or occupation of an employer at the time of the injury, if the person in relation to this service does not maintain a separate business, does not hold himself or herself out to and render service to the public, and is not an employer subject to this act.

 MCL 418.131(1) provides that “[t]he right to the recovery of benefits as provided in this act shall be the employee’s exclusive remedy against the employer for a personal injury or occupational disease ... .”

 Reed v Yackell, unpublished opinion per curiam of the Court of Appeals, issued February 14, 2003 (Docket No. 236588), vacated 469 Mich 960 (2003).

 469 Mich 960 (2003).

 Hoste, supra at 576.

 469 Mich 1051 (2004).

 Reed v Yackell, unpublished opinion per curiam of the Court of Appeals, issued June 8, 2004 (Docket No. 236588).

 Hoste, supra at 572.

 471 Mich 957 (2005).

 Hoste, supra; Clark, supra; Farrell, supra.

 At the time of the plaintiffs injuries in Hoste, the definitions now found in subsections 161(1)(l) and 161(l)(n) were found in former subsections 161(l)(b) and 161(l)(d), respectively. Hoste, supra at 566 n 2.

 See Central Wholesale Co v Sefa, 351 Mich 17, 25; 87 NW2d 94 (1957), quoting 2 CJS, Agency, § 96, pp 1210-1211:
“Whenever the principal, by statements or conduct, places the agent in a position where he appears with reasonable certainty to be acting for the principal, or without interference suffers the agent to assume such a position, and thereby justifies those dealing with the agent in believing that he is acting within his mandate, an apparent authority results ...

 Herskovitz testified that Reed’s duties were “[n]othing major. It’s to get a box or bring it up or take this out. It’s that kind of work.” Hadley testified that, in between deliveries, he would have his helpers “go [to the] back [of the delivery truck] and set more stuff up at the door, or if it’s up to the front, move it this way or whatever at the time.”

 Report of the Employer’s Liability and Workmen’s Compensation Commission of the State of Michigan, p 16 (1911) (Report).

 Id., pp 16-23.

 As we have explained, the Court of Appeals ignored our statement in Hoste, supra at 572, that the economic realities test cannot be used to supersede subsection 161(l)(n) by adding factors to the statute that the Legislature did not see fit to incorporate, and based its analysis on such factors from older cases discussing the economic realities test. These were things such as how Reed was paid and whether taxes were withheld, whether Herskovitz and Hadley had control over Reed’s duties, and whether Reed’s services were an integral part of Mr. Food’s business. The Legislature did not see fit to include such factors in subsection 161(l)(n) and, therefore, the Court of Appeals reliance on them was error. This means then that the prelegislation cases were superseded by the legislation and are thus without authority as law on these issues.

 Cf. Michael H v Gerald D, 491 US 110, 127 n 6; 109 S Ct 2333; 105 L Ed 2d 91 (1989).

 Const 1963, art 6, § 13 provides that “[t]he circuit court shall have original jurisdiction in all matters not prohibited by law... .”

 MCL 418.841(1) provides:
Any dispute or controversy concerning compensation or other benefits shall be submitted to the bureau and all questions arising under this act shall be determined by the bureau or a worker’s compensation magistrate, as applicable. [Emphasis added.]

 Sewell, supra at 65 (Levin, J., concurring).

 Pohutshi v City of Allen Park, 465 Mich 675, 693; 641 NW2d 219 (2002).

 Bowie v Arder, 441 Mich 23; 490 NW2d 568 (1992); Fox v Univ of Michigan Bd of Regents, 375 Mich 238, 242-243; 134 NW2d 146 (1965); In re Estate of Fraser, 288 Mich 392, 394; 285 NW 1 (1939); Ward v Hunter Machinery Co, 263 Mich 445, 449; 248 NW 864 (1933).

 This statute provides:
A proceeding for compensation for an injury under this act shall not be maintained unless a claim for compensation for the injury, which claim may be either oral or in writing, has been made to the employer or a written claim has been made to the bureau on forms prescribed by the director, within 2 years after the occurrence of the injury.