SHAH v CITY OF FARMINGTON HILLS

Docket No. 271252. Submitted September 12, 2007, at Detroit. Decided
    February 21, 2008, at 9:05 a.m.

Plaintiffs Ajay and Bharati Shah brought an action in the Oakland
    Circuit Court against the city of Farmington Hills, alleging that
    the city's attempts to enforce various ordinances in connection
    with the construction and occupancy of the Shahs' home consti-
    tuted gross negligence and a nuisance. Oxford Estates Condo-
    minium Association intervened, alleging that the Shahs had
    violated various association bylaws. The court, Steven N. Andrews,
    J., ordered the Shahs to comply with the bylaws and pay the
    association nearly $60,000 in attorney fees and costs. The Court of
    Appeals affirmed in an unpublished opinion per curiam, issued
    April 26, 2005 (Docket No. 252971). The trial court subsequently
    awarded the association attorney fees and costs incurred after the
    original order was entered. The association sought to recover the
    total, nearly $90,000, by garnishment from Ajay Shah's employer,
    the Ford Motor Company, but Shah's employment was terminated
    shortly thereafter, and he waived his right to sue Ford in exchange
    for a severance package in excess of $50,000. Ford contended that,
    under the garnishment restrictions of the federal Consumer Credit
    Protection Act (CCPA), 15 USC 1671 *et seq.*, it was only liable for
    25 percent of this amount, but the association argued that the
    severance payment did not constitute "earnings" under the CCPA
    and, therefore, Ford should have garnished the entire amount of
    the severance package. The trial court ruled that the association
    was entitled to the entire amount of Ford's severance payment to
    Shah as well as an additional award of attorney fees and costs.
    Ford appealed.

The Court of Appeals *held*:

A lump-sum severance payment can be considered compensa-
    tion paid or payable for personal services in the form of a bonus or
    other type of payment and therefore constitutes earnings under
    the CCPA. Ford's severance payment to Shah was not a benefit
    arising solely out of the termination of his employment with the
    company, because Ford's offering of two levels of severance ben-
    efits based on whether an employee signs a voluntary waiver and

release agreement does not force terminated employees to forgo a legal right in accepting such payments.

Reversed in part, vacated in part, and remanded for further proceedings.

METER, J., dissenting, would have affirmed because the severance payment Shah received was not compensation for personal services but, rather, was compensation for his cessation of personal services and his execution of a liability waiver.

GARNISHMENT — SEVERANCE PAY.

A lump-sum severance payment can be considered compensation paid for personal services and therefore may be subject to the garnishment provisions of the Consumer Credit Protection Act (15 USC 1672[a]).

*Taubman, Nadis & Neuman, P.C.* (by *Ronn S. Nadis* and *Michael K. Dorocak*), for the Oxford Estates Condominium Association.

*Dickinson Wright PLLC* (by *Maurice G. Jenkins* and *Khalilah V. Spencer*) for the Ford Motor Company.

Before: SCHUETTE, P.J., and HOEKSTRA and METER, JJ.

SCHUETTE, P.J. In this garnishment action, Ford Motor Company (Ford) appeals as of right the trial court's May 31, 2006, order and judgment entered in favor of Oxford Estates Condominium Association (the association), which incorporated by reference the trial court's May 9, 2006, opinion and order. We reverse the trial court's May 9, 2006, opinion and order, vacate the May 31, 2006, order and judgment, and remand for proceedings consistent with this opinion.

I. FACTS

Plaintiffs Ajay Shah and Bharati Shah, husband and wife, constructed a site condominium in Oxford Estates, a residential development in Farmington Hills, Michigan. This case originated when the city of Farmington

Hills initiated proceedings against plaintiffs to enforce certain city ordinances in connection with the construction and occupancy of plaintiffs' home. The plaintiffs then sued the city, alleging that its code enforcement actions were grossly negligent and a nuisance.

On January 23, 2002, the trial court granted the association's motion to intervene in the case. The association filed a complaint against plaintiffs, alleging that they violated the terms of the condominium bylaws by: (1) failing to submit a complete set of plans and specifications covering all aspects of the construction of their residence; (2) failing to complete the façade, landscaping, trees, and plantings; (3) failing to install an underground irrigation system; (4) failing to keep their site free of debris, litter, and trash; and (5) failing to maintain their site in a safe, clean, and sanitary condition. The association asserted that plaintiffs' actions constituted a nuisance because their neighbors "have been subjected to the existence of what is essentially a construction site for nearly three (3) years." The association sought monetary damages and an injunction "[e]njoining the Shahs from any continued acts of nuisance." The association also sought an award of costs and reasonable attorney fees pursuant to the terms of the condominium bylaws.

The trial court "enjoined [plaintiffs] from installing or constructing any new feature to the exterior of the house . . . or to any of the landscaping or other exterior elements located on the . . . homesite" until further order of the court. On May 16, 2003, the association moved the trial court to hold plaintiffs in contempt of court. The trial court adjudged plaintiffs in contempt of court and ordered them to serve 30 days in jail or, in the alternative, to pay the association $2,500 by June 11, 2003.

On July 8, 2003, the trial court granted partial summary disposition in favor of the association. The trial court ordered plaintiffs to "dismantle and reconstruct the violating portions of their property and compensate the Association its reasonable attorney fees in bringing its claim to enforce the [bylaws]." The trial court further ordered plaintiffs "to comply with the [bylaws] regarding the continued construction of their residence, the landscaping and the automobile stored in the back yard."

On October 29, 2003, the trial court ordered plaintiffs to reconstruct their driveway and landscaping in accordance with plans approved by the association. The trial court ordered plaintiffs to pay the association $59,096.83 for costs and attorney fees. The trial court denied plaintiffs' motion for reconsideration and relief from the judgment. Thereafter, plaintiffs appealed the October 29, 2003, order as of right. This Court denied plaintiffs' motion to stay the proceedings in this case pending the outcome of the appeal. *Shah v Farmington Hills*, unpublished order of the Court of Appeals, entered January 30, 2004 (Docket No. 252971). This Court later affirmed the trial court's October 29, 2003, order granting partial summary disposition in favor of the association and ordering plaintiffs to pay defendant $59,096.83 in costs and attorney fees. *Shah v Farmington Hills*, unpublished opinion per curiam of the Court of Appeals, issued April 26, 2005 (Docket No. 252971).

On August 19, 2005, the trial court awarded the association an additional $59,676.29 in costs and attorney fees, which it incurred "after those covered by the October 29, 2003 Order and Judgment." Thereafter, the association sent requests and writs for garnishment to Ford, Shah's employer. Shah's employment with Ford was terminated on January 31, 2006. Ford sent gar-

nishee disclosures to the association stating that "principal defendant is not employed by the garnishee defendant."

The association moved for entry of a default judgment against Ford, in which it alleged, in part:

> 3. Upon information and belief, as of February 17, 2006, Ford was indebted to Ajay Shah for severance pay and/or benefits under the Ford Involuntary Salaried Separation Policy or Salaried Income Security Plan in an amount in excess of Sixty Thousand ($60,000.00) Dollars.

> *  *  *

> 8. Ford's Garnishee Disclosures do not satisfy the requirements of MCR 3.101(H) for the reason that Ford has not stated whether it was indebted to Ajay Shah as of the date Ford was served with the Garnishment . . . .

> 9. As a result of Ford's failure to disclose whether it was indebted to Ajay Shah on the date of service of the Garnishment, a default and default judgment should be entered against Ford pursuant to MCR 3.101(S)(1).

The association sought a default judgment against Ford in the amount of $89,433.51, which represented the sum of the judgments against plaintiffs that had not been satisfied.

Ford conceded that, on March 15, 2006, it paid Shah a "net amount of $52,803.85 less applicable taxes and other deductions, and $406.18 for accrued vacation pay less the applicable taxes and other deductions." Ford asserted that it

> should have garnished each payment in accordance with the garnishment restrictions under the Federal Consumer Credit Protection Act [CCPA].[1] Had Ford properly garnished in accordance with the writ, it would have garnished

---

[1] 15 USC 1671 *et seq.*

> 25% of the net payments to Shah. . . . Under 15 U.S.C.
> § 1673(a)(1), "the maximum part of the aggregate dispos-
> able earnings of an individual for any workweek which is
> subject to garnishment may not exceed 25 per centum of
> his disposable earnings for that week . . . ."

Thus, according to Ford, it was only liable for
$13,302.51, the amount that it should have withheld
under the CCPA. In response, the association argued
that the payments to Shah did not constitute "earn-
ings" under the CCPA and, therefore, the garnishment
limitations set forth in the CCPA did not apply. The
association requested an award of costs and attorney
fees under MCR 3.101(S) on the basis that it had
"unnecessarily incurred costs and attorney fees related
to Ford's default and improper Garnishee Disclosures."

Following a hearing on the issue, the trial court
issued an opinion and order on May 9, 2006, concluding
that the payment of severance benefits did not consti-
tute "earnings" under the CCPA. Thus, the entire
severance payment that Ford made to Shah was subject
to garnishment. On May 31, 2006, the trial court
entered an order and judgment in favor of the associa-
tion, and against Ford, "in the amount of Ford's sever-
ance payment to Ajay Shah in the amount of
$52,803.85, plus Oxford Estates' reasonable costs and
attorney fees related to this matter in the amount of
$5,820.00 for a total judgment amount of $58,623.85."
Ford now appeals as of right.

## II. STANDARD OF REVIEW

Whether a lump-sum payment of severance benefits
by an employer to an employee constitutes "earnings"
under the CCPA and, thus, is subject to the limitations
on garnishment set forth in the CCPA, presents a
question of law. Questions of law are reviewed de novo

on appeal. *Cowles v Bank West,* 476 Mich 1, 13; 719 NW2d 94 (2006). "Statutory interpretation is an issue of law that is reviewed de novo." *Shinholster v Annapolis Hosp,* 471 Mich 540, 548; 685 NW2d 275 (2004). This Court's " 'fundamental obligation when interpreting statutes is "to ascertain the legislative intent that may reasonably be inferred from the words expressed in the statute." ' " *Paige v Sterling Hts,* 476 Mich 495, 504; 720 NW2d 219 (2006), quoting *Reed v Yackell,* 473 Mich 520, 528; 703 NW2d 1 (2005), quoting *Koontz v Ameritech Services, Inc,* 466 Mich 304, 312; 645 NW2d 34 (2002).

### III. ANALYSIS

The issue in this case is whether a lump-sum severance payment constitutes "earnings" under the CCPA and, more specifically, whether such a payment can be construed as "compensation paid or payable for personal services." We conclude that it can.

The CCPA defines "earnings" as "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program." 15 USC 1672(a). Two early decisions, *Kokoszka v Belford,* 417 US 642; 94 S Ct 2431; 41 L Ed 2d 374 (1974), and *Pallante v Int'l Venture Investments, Ltd,* 622 F Supp 667 (ND Ohio, 1985), held that the status of "earnings" hinged on whether they were disbursed in a periodic manner. In other words, "[t]he determinative factor in deciding whether severance pay [was] subject to the statutory limitations [was] whether the monies [were] received in periodic payments." *Pallante, supra* at 669. Lump-sum payments were held to be outside the scope of the statute. *Id.* However, in *Genesee Co Friend of the Court v Gen*

*Motors Corp*, 464 Mich 44; 626 NW2d 395 (2001), our Supreme Court refocused the interpretation of "earnings" under the CCPA by emphasizing the nature of the payment, rather than its frequency, and held that signing bonuses, profit-sharing payments, and recognition-award payments all constituted "earnings" under the CCPA. In doing so, our Supreme Court rejected *Kokoszka* and *Pallante*, and concluded that the proper test for determining whether a payment is "earnings" under the CCPA was whether the payments were " 'compensation paid or payable for personal services.' " *Genesee Co, supra* at 56, quoting 15 USC 1672 (a).

Here, the trial court relied on *Pallante* to hold that Shah's severance payment did not qualify as "earnings" under the CCPA. But since the *Pallante* court held that "earnings" had to be periodic payments, and our Supreme Court clearly determined in *Genesee Co* that the periodic nature of a payment ultimately had no bearing on whether it is deemed "earnings," the trial court erred in its decision.

Again, in *Genesee Co*, our Supreme Court quoted and explained 15 USC 1672(a) as follows:

> "The term 'earnings' means compensation paid or payable for personal services, whether denominated as wages, salary, commission, *bonus, or otherwise*, and includes periodic payments pursuant to a pension or retirement program." The reference to periodic payments does not apply to the definition as a whole. The inclusion of "bonus" in the definition of earnings clearly negates the suggestion that periodic payment is required. Bonuses are typically sporadic, irregular, unpredictable, and discretionary payments by the employer. [*Genesee Co, supra* at 55-56 (emphasis added).]

Although the severance payment made to Shah is not wages, commission, or even a regular salary, it is

compensation paid for personal services in the form of a "bonus" or "other" type of payment. The decision to terminate certain employees and not others "when it is necessary to have an involuntary reduction in the U.S. salaried workforce," as stated in the applicable Ford policy manual, is completely at the discretion of the employer. Offering a severance payment constitutes a bonus or other type of payment as compensation for the employee's past (and future unneeded) personal services, and severance payments are intended to be in line with employees' current salary level (calculated in months based on full years of service) in order to assist them with the transition to unemployment.

The association argues that the severance payment was not made in exchange for personal services because Black's Law Dictionary (6th ed) defines "severance payment" as "payment by an employer to an employee *beyond his wages* on termination of his employment." (Emphasis added.) Thus, the association argues, since the payment is defined as being beyond regular wages, it cannot be considered as being payment for personal services. We disagree. This definition has changed. In the 8th edition of Black's, "severance payment" is now defined as "money (apart from back wages or salary) paid by an employer to a dismissed employee." This new definition mentions nothing about a severance payment being beyond regular wages; it only clarifies that it is *not* back wages or salary owed to an employee upon termination of employment. Therefore, this contemporary definition brings severance payments back under the umbrella of "compensation for personal services."

The association also argues that a severance payment is not considered compensation for personal services because, in Michigan, the consideration given by the employee for the payment is not work or personal

services provided to the employer, but rather the "giving up of or forbearance to exercise some legal right." *Kolka v Atlas Chemical Industries*, 13 Mich App 580, 581; 164 NW2d 755 (1968). In *Kolka*, the plaintiff was trying to claim severance pay from his employer in December 1960, despite not having actively worked for the company since May 1959. The Court ruled that since he was not actively employed by the company at the time he asked for severance pay (he claimed he was on the "inactive" list because of a disability), he was unable to establish the consideration necessary to bind the employer to its offer of termination pay. *Id.*

The "legal rights" at issue in this case are distinguishable from those in *Kolka*. In *Kolka*, the right being given up is never specifically noted, but appears to be either the right to continue working for the same employer, or the right to be compensated with termination pay by the employer after establishing eligibility for such payments. Neither of those rights is at issue here. Here, the legal right allegedly given up was the right to bring a future action against Ford in exchange for severance pay.

Ford's separation policy does not preclude terminated employees from enforcing a legal right. An employee who is selected for termination under the policy is given two choices of benefit level, depending on whether he or she signs the voluntary waiver and release agreement. The basic benefit level is awarded to employees who do not sign the agreement, and consists of up to three months' base salary in severance pay (provided the employee has at least three full years of service at Ford), and continuation of insurance benefits for up to three months. The enhanced benefits level is for people who do sign the waiver, and includes up to an

additional nine months' salary in severance pay, continuation of insurance for up to three months, and re-employment assistance from Ford.

Although the levels of benefit received are different, and the enhanced benefits package provides an incentive to sign the waiver agreement, signing of the agreement is not mandatory. Employees are given a choice of whether or not to sign. Those who sign get a "better" benefits package, but those who do not will at least get *some* benefits while retaining their right to take future action against Ford. Since Ford gives its employees a choice, accepting the severance payment does not automatically mean that the employee gives up some sort of legal right. Shah chose to take the enhanced benefits package, but it was his choice to make—Ford did not force him to sign the waiver agreement.

Under our Supreme Court's holding in *Genesee Co* and its emphasis on the *nature* of "earnings," rather than the *periodic frequency* relied on in cases such as *Pallante* and *Kokoszka*, Ford's lump-sum severance payment to Shah constituted "earnings" under the CCPA. Further, Ford's severance payment to Shah was not a benefit arising solely out of the termination of his employment with the company, because Ford's offering of two levels of severance benefits based on whether an employee signs a voluntary waiver and release agreement does not force terminated employees to forgo a legal right in accepting such payments.

We reverse the trial court's May 9, 2006, opinion and order, vacate the May 31, 2006, order and judgment, and remand for proceedings consistent with this opinion. We do not retain jurisdiction.

HOEKSTRA, J., concurred.

METER, J. (*dissenting*). Because I do not believe that the severance payment at issue in this case constituted "earnings" under 15 USC 1672(a), I respectfully dissent. I would affirm the trial court's order.

15 USC 1672(a) defines "earnings" as "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program." As noted in *Vanderlaan v Tri-County Community Hosp*, 209 Mich App 328, 332; 530 NW2d 186 (1995), clear statutory language should be applied as written. The severance payment Shah received was not provided "for personal services." Instead, it was provided, in essence, in exchange for having Shah *cease to provide* personal services. As Ford's Involuntary Salaried Separation Policy (ISSP) manual states, the separation policy "applies during times when it is necessary to have an involuntary reduction in the U.S. salaried workforce." Ford's severance payments under the ISSP help to ease the burden of unemployment but are not provided in exchange for personal services, and the fact that they are based, in part, on the number of years that an employee worked for Ford does not change this fact.

Moreover, Shah elected an enhanced benefits package under the ISSP. He received a larger lump-sum payment in exchange for agreeing to forgo any legal action against Ford in connection with the termination of his employment. Therefore, in Shah's individual case, a large part of the severance payment was received in exchange for a liability waiver and not in exchange for personal services. This lends further support to my conclusion that the severance payment at issue here should not be considered "earnings" under 15 USC 1672(a).

I would affirm the trial court's order. While the trial court may have relied on slightly different reasoning from mine, this Court will not reverse a trial court's decision if it reached the right result for a different reason. *Lane v KinderCare Learning Centers, Inc*, 231 Mich App 689, 697; 588 NW2d 715 (1998).[1]

I would affirm.

---

[1] Although its opinion is not entirely clear, the trial court appeared to find dispositive the fact that the severance payment was disbursed as a lump sum and not as periodic payments. While this type of analysis is supported by *Pallante v Int'l Venture Investments, Ltd*, 622 F Supp 667 (ND Ohio, 1985), I do not find that case to be dispositive here because it relied on *Kokoszka v Belford*, 417 US 642; 94 S Ct 2431; 41 L Ed 2d 374 (1974). See *Pallante, supra* at 669. In *Genesee Co Friend of the Court v Gen Motors Corp*, 464 Mich 44, 56 n 7; 626 NW2d 395 (2001), the Michigan Supreme Court rejected as dicta the pertinent portion of *Kokoszka*.