Per CURIAM.
In this declaratory judgment action, plaintiff, Auto-Owners Insurance Company, appeals as of right a circuit court opinion and order denying its motion for summary disposition and granting summary disposition in favor of defendant Joseph Derry. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.
This case arose after Derry was injured while working on a lawn crew of defendant All Star Lawn Specialists Plus, Inc. (All Star). At the time of his injury, Derry was performing a “fall cleanup” at an apartment complex and was using a leaf vacuum machine to suck up leaves into a truck. He sustained injuries after the leaf vacuum machine tipped over, causing its boom to strike him. It is undisputed that at the time of the incident, the mechanism attaching the leaf vacuum machine to the truck was unlatched or unlocked, and that if the latch had been “locked down,” the machine would not have tipped over.
*521 Derry filed a personal injury action against All Star and Jeffrey Harrison, who coowned and operated All Star, claiming that Harrison negligently failed to lock the leaf vacuum machine to the truck, which caused the machine to tip over and strike him. Derry also filed an action against Auto-Owners, who insured All Star under a commercial automobile insurance policy, seeking no-fault insurance benefits for his injuries. Thereafter, Auto-Owners, who also insured All Star under commercial general liability and workers’ compensation insurance policies filed this cause of action to determine the parties’ right to insurance coverage under the various insurance policies, which was largely dependent on Derry’s status as an employee or independent contractor at the time of his accidental injury.
Auto-Owners subsequently moved for summary disposition under MCR 2.116(C)(10), arguing that, as a matter of law, Derry was an “employee” of All Star at the time of his injuries as defined under § 161(1) of the Worker’s Disability Compensation Act (WDCA), MCL 418.161(1), and thus, the Auto-Owners workers’ compensation insurance policy was the appropriate policy to provide coverage for Derry’s injuries. Derry argued that he was not an employee of All Star at the time of the injuries, but was an “independent contractor,” and, thus, the workers’ compensation policy did not apply to provide coverage for his injuries. Derry argued instead that the general liability insurance policy provides coverage for his negligence claim against All Star and the commercial automobile policy provides coverage for his claim for personal injury protection benefits under Michigan’s no-fault vehicle insurance act. The trial court, in denying Auto-Owners’ motion for summary disposition and granting summary disposition in favor of Derry, held that Derry was not an employee under the workers’ compensation act, MCL 418.161(1), or *522 within the meaning of any of the insurance contracts. The court then concluded that (1) Derry was not entitled to coverage under the workers’ compensation act, and thus, was not entitled to recover under Auto-Owners’ workers’ compensation insurance policy, (2) Auto-Owners’ general liability insurance policy provided coverage for Derry’s negligence claim against All Star and Harrison, and (3) Auto-Owners’ commercial automobile insurance policy provided coverage for Der-ry’s claim for no-fault benefits. This appeal by Auto-Owners ensued.
“This Court reviews a trial court’s summary disposition decision de novo.” Liparoto Constr, Inc v Gen Shale Brick, Inc, 284 Mich App 25, 29; 772 NW2d 801 (2009). “A motion under MCE 2.116(0(10) tests the factual sufficiency of a complaint.” Id. “The court must consider the affidavits, pleadings, depositions, admissions, and other documentary evidence submitted by the parties in the light most favorable to the party opposing the motion.” Id. “The motion is properly granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.” Id. at 29-30. The trial court may not make findings of fact or weigh credibility in deciding a motion for summary disposition. Skinner v Square D Co, 445 Mich 153, 161; 516 NW2d 475 (1994).
Further, the interpretation of a statute presents a question of law subject to review de novo by this Court. Reed v Yackell, 473 Mich 520, 528; 703 NW2d 1 (2005) (opinion by TAYLOR, C.J.), citing Hoste v Shanty Creek Mgt, Inc, 459 Mich 561, 569; 592 NW2d 360 (1999). Pertinent here, is whether an individual is an “employee” as statutorily defined in the workers’ compensation act, which presents a question of law. McCaul v Modern Tile & Carpet, Inc, 248 Mich App 610, 615; 640 *523 NW2d 589 (2001). This Court’s “fundamental obligation when interpreting statutes is ‘to ascertain the legislative intent that may reasonably be inferred from the words expressed in the statute.’ ” Reed, 473 Mich at 528 (opinion by TAYLOR, C.J.), quoting Koontz v Ameritech Servs, Inc, 466 Mich 304, 312; 645 NW2d 34 (2002). “If the statute is unambiguous, judicial construction is neither required nor permitted.” Reed, 473 Mich at 529 (opinion by TAYLOR, C.J.). The proper interpretation of a contract, such as the insurance contracts at issue here, also presents an issue of law subject to review de novo. Auto-Owners Ins Co v Harrington, 455 Mich 377, 381; 565 NW2d 839 (1997); Clark v DaimlerChrysler Corp, 268 Mich App 138, 141; 706 NW2d 471 (2005). In Auto-Owners Ins Co v Churchman, 440 Mich 560; 489 NW2d 431 (1992), the Michigan Supreme Court set forth the following guidelines in reviewing the language of an insurance policy:
An insurance policy is much the same as any other contract. It is an agreement between the parties in which a court will determine what the agreement was and effectuate the intent of the parties. Accordingly, the court must look at the contract as a whole and give meaning to all terms. Further, any clause in an insurance policy is valid as long as it is clear, unambiguous and not in contravention of public policy. This Court cannot create ambiguity where none exists.
Exclusionary clauses in insurance policies are strictly construed in favor of the insured. However, coverage under a policy is lost if any exclusion within the policy applies to an insured’s particular claims. Clear and specific exclusions must be given effect. It is impossible to hold an insurance company liable for a risk it did not assume. [Churchman, 440 Mich at 566-567 (quotation marks and citations omitted).]
Accordingly, the “ [interpretation of an insurance policy ultimately requires a two-step inquiry: first, a determi *524 nation of coverage according to the general insurance agreement and, second, a decision regarding whether an exclusion applies to negate coverage.” Harrington, 455 Mich at 382. We address the merits of the parties’ claims with these standards in mind.
I. WORKERS’ COMPENSATION POLICY
Auto-Owners first claims that the trial court erred by concluding that its workers’ compensation policy did not provide coverage for Derry’s injuries. The policy at issue provides insurance for accidental bodily injury when benefits are required under the workers’ compensation law. “Michigan’s Worker’s Disability Compensation Act requires that employers provide compensation to employees for injuries suffered in the course of the employee’s employment, regardless of who is at fault.” Hoste, 459 Mich at 570, citing MCL 418.301. The threshold question, therefore, in determining whether an individual is entitled to coverage under the workers’ compensation act is whether the individual is an “employee” as statutorily defined by the act. Reed, 473 Mich at 530 (opinion by TAYLOR, C.J.).
Section 161(1) of the workers’ compensation act, MCL 418.161(1), specifically defines who is an “employee” under the act. Hoste, 459 Mich at 570, 572-573. The subsections pertinent to this case define an employee as:
(,l) Every person in the service of another, under any contract of hire, express or implied ....
[[Image here]]
(n) Every person performing service in the course of the trade, business, profession, or occupation of an employer at the time of the injury, if the person in relation to this service does not maintain a separate business, does not *525 hold himself or herself out to and render service to the public, and is not an employer subject to this act.
Sections 161(1)(Z) and (n) “must be read together as separate and necessary qualifications in establishing employee status.” Hoste, 459 Mich at 571, 573; see also Reed, 473 Mich at 530 (opinion by TAYLOR, C.J.). Accordingly, first it must be determined whether Derry was an employee at the time of his injury under § 161(1)(Z). If so, then it must be determined whether he was an employee under § 161(l)(n). Reed, 473 Mich at 530 (opinion by TAYLOR, C.J.); Hoste, 459 Mich at 573.
The parties do not dispute that Derry was an “employee” as defined under § 161(1)(Z), which “involves an inquiry regarding whether [an individual] was an employee under a ‘contract of hire.’ ” Hoste, 459 Mich at 573; see also Reed, 473 Mich at 530-531 (opinion by TAYLOR, C.J.). All Star paid him an $11 hourly wage with overtime, which was clearly intended as “real and substantial” consideration, especially in light of the fact that he worked 24 to 40 hours a week during the lawn maintenance season. Blanzy v Brigadier Gen Contractors, Inc, 240 Mich App 632, 640-641; 613 NW2d 391 (2000), citing Hoste, 459 Mich at 576; see Reed, 473 Mich at 532 (opinion by TAYLOR, C.J.), quoting Hoste, 459 Mich at 576 (“[T]he linchpin to determining whether a contract is ‘of hire’ is whether the compensation paid for the service rendered was not merely a gratuity but, rather, ‘intended as wages, i.e., real, palpable and substantial consideration^]’ ”)
However, entitlement to workers’ compensation benefits under the act is further dependent on satisfying the definition of an employee under § 161(l)(n), which “sets forth three criteria for determining whether a person performing services for an employer qualifies as what is commonly called an ‘independent contractor’ *526 rather than an employee.” Reed, 473 Mich at 530, 535 (opinion by TAYLOR, C.J.). The pivotal question presented in this case is whether all three requirements in § 161(l)(n) must be met in order for a person to be considered an independent contractor, or whether a person is considered an independent contractor if any one of the three are met. There are a number of cases from this Court that hold that a person is not an employee under the workers’ compensation act, but is an independent contractor, if any one or more of the statutory criteria set forth in § 161(l)(n) applies. McCaul, 248 Mich App at 616; Blanzy, 240 Mich App at 641; Luster v Five Star Carpet Installations, Inc, 239 Mich App 719, 725; 609 NW2d 859 (2000).[1] And all those cases based their holding on this Court’s decision in Amerisure Ins Cos v Time Auto Transp, Inc, 196 Mich App 569; 493 NW2d 482 (1992).
In Amerisure, id. at 574, this Court opined as follows in interpreting the statute:[2]
The Legislature is presumed to have intended the meaning it plainly expressed. Frasier v Model Coverall Service, Inc, 182 Mich App 741, 744; 453 NW2d 301 (1990). If the plain and ordinary meaning of the language is clear, judicial construction is normally neither necessary nor permitted. Id. The plain and ordinary meaning of the language of the statute involved in this case is clear. The latter portion of the statute is drafted in the negative, employing the word “not” before each provision: “provided the person in relation to this service does not maintain a separate business, does not hold himself or herself out to and render service to the public and is not an employer *527 subject to this act.” By so employing the word “not,” the Legislature intended that once one of these three provisions occurs, the individual is not an employee. Thus, each provision must be satisfied for an individual to be an employee. If the Legislature had intended otherwise, it would have drafted the statute as plaintiff suggests.
Although we are bound by the Amerisure Court’s interpretation of the statute, MCR 7.215(J)(1), we respectfully disagree with that interpretation and follow it only because we are obligated to do so. MCR 7.215(J)(2). But for the requirement that we follow the prior decision, we would reach a different conclusion.
While the wording of the statute in the negative does render it more difficult to properly read, we nonetheless conclude that the Amerisure Court focused on the wrong word in analyzing the statute. Instead of focusing on the word “not,” the panel should have focused on the word “and.” That is, the Amerisure Court erroneously concluded that a person is not an employee if any of the three criteria are met. But that overlooks the Legislature’s use of the word “and” in linking the three criteria and the purpose behind the provision in the first place. The Legislature was endeavoring to define the difference between an “employee” (who is covered under the act) and an “independent contractor” (who is not covered under the act). So the Legislature wrote a definition of “employee” in the negative, saying essentially that an “employee” is a person who, with respect to the service provided to the employer, is not an independent contractor. It then lists the three criteria to determine if a person is an independent contractor, all of which must be met (hence the use of the word “and” in the listing).
Some guidance in reaching this interpretation is provided in the plurality opinion of Chief Justice TAYLOR in Reed. In Reed, Chief Justice TAYLOR restates the *528 statute in the positive, avoiding the cumbersome negative definition: “Subsection 161(l)(n) provides that every person performing a service in the course of an employer’s trade, business, profession, or occupation is an employee of that employer. However, the statute continues by excluding from this group any such person who: (1) maintains his or her own business in relation to the service he or she provides the employer, (2) holds himself or herself out to the public to render the same service that he or she performed for the employer, and (3) is himself or herself an employer subject to the WDCA.” Reed, 473 Mich at 535 (opinion by TAYLOR, C.J.). Thus, the plurality opinion in Reed suggests that all three conditions must be met in order for the person not to be an employee.
But unfortunately, it is only a suggestion. The opinion of Chief Justice TAYLOR in Reed was only a plurality opinion. And it focused on the requirement that the separate business be the same service as that provided to the employer. That is, for example, a person employed as a roofer can only be considered an independent contractor if his or her own business is also a roofing business. As Chief Justice TAYLOR stated, “Thus, for example, if the service that the person performs for the employer is roofing, to be an independent contractor and, thus, be ineligible for worker’s compensation, the person must maintain a separate roofing business, which roofing business he holds himself or herself out to the public as performing.” Reed, 473 Mich at 537 (opinion by TAYLOR, C.J.). Interestingly, while the plurality opinion in Reed ignored the third requirement, that the independent contractor must also be an employer under the workers’ compensation act, the example of an independent contractor that it gave indicated that both of the first two requirements must be met, not just one of them. Nonetheless, this supports *529 the view that the Supreme Court’s reading of the statute is that all three requirements must be met before a person is classified as an independent contractor rather than as an employee.
Moreover, we believe that this comports with the Legislature’s intent behind this provision. In our view, the Legislature, despite somewhat cumbersome drafting, was attempting to accomplish three things in § 161(l)(n): (1) to make it clear that a person employing an independent contractor does not have to provide workers’ compensation coverage to that independent contractor, (2) to provide a definition that distinguishes between an employee and an independent contractor so that, either by accident or subterfuge, a person who should be covered as an employee under the act is not classified as an independent contractor and escapes coverage, and (3) to make it clear that a person can be an employee of one employer, while maintaining their own side business as an independent contractor. As the plurality opinion in Reed makes clear, the third purpose is addressed by examining whether the person is providing the same service as the employer or a different service.
Following the Amerisure interpretation, if only one of the three conditions set forth in § 161(l)(n) had to be met in order for a person to be classified as an independent contractor, it is easy to imagine any number of situations where a person who is truly an employee would suddenly be reclassified as an independent contractor. For example, a secretary who otherwise meets the definition of an employee would suddenly become an independent contractor, and no longer covered by workers’ compensation, when the secretary runs an ad offering typing services that the secretary performs on evenings and weekends because he or she is holding his or her services out to the public (and it is the same service that he or she provides *530 for his or her employer). Or the “shade tree” mechanic who, after leaving his or her full-time job at an auto repair facility, works on cars at home for people who responded to a flyer that he or she posted at the local grocery store. Or the school music teacher who also offers private music lessons to earn a little extra money. To follow the Ameri-sure opinion, in all those cases these individuals would lose their protections under the workers’ compensation act because, having held their services out to the public, they are now independent contractors and no longer employees.
But to follow the suggestion in the plurality opinion in Reed would achieve the purpose of the Legislature in writing this section. In each of the above examples, the individuals would not lose their status as employees (and coverage under the workers’ compensation act) because, although they hold themselves out to render a service to the public and even arguably maintain their own separate business (depending on how “business” is defined), they are not employers under the act. And, therefore, they are not independent contractors. But it would also achieve the purpose of not requiring an employer to provide workers’ compensation coverage for the true independent contractor, even where the independent contractor provides the same service. For example, in the case at bar, had All Star found itself in a position of having more work than it could handle, but wanted to retain a subcontractor rather than hire additional employees, it could retain another lawn care business (i.e., one that had its own business, held itself out as offering service to the public, and was an employer under the act) and not have to worry about providing workers’ compensation coverage.
But what would not be possible under the suggestion in Reed would be for an employer to take a person who *531 is otherwise an employee and classify them as an independent contractor merely because it wants to so classify the person. Indeed, one of the coowners of All Star, Debra Harrison, stated in her affidavit that all of All Star’s employees were “given the option of being paid on a W-2 or a 1099.” That is to say, they were given the option of being classified by All Star as either an employee or an independent contractor. But neither employees nor employers have been given such classification authority. If they had, it would not have been necessary for the Legislature to have written a multi-page definition of “employee.” Rather, § 161 could simply read, “ ‘Employee’ means a person classified as such by the employer at the time of hire.” And workers’ compensation coverage would become optional rather than mandatory. See MCL 418.111 (“Every employer, public and private, and every employee, unless herein otherwise specifically provided, shall be subject to the provisions of this act and shall be bound thereby.”).
Turning to the case at bar, it is not disputed that Derry performed lawn mowing, snow removal, and leaf clearing services for both All Star and for his neighbors. During the time Derry worked for All Star, he provided lawn maintenance services, i.e., mowing, blowing, edging, trimming, and leaf removal, as well as occasional snow removal services for commercial properties, such as apartment complexes and industrial buildings. During that same period, Derry also shoveled snow, mowed lawns, and raked leaves for individuals in his neighborhood, work he obtained through word of mouth and personal solicitation by going door to door in his subdivision. The lawn maintenance and snow removal work performed by Derry for All Star, which involved commercial properties, was clearly on a much larger scale than the services performed for his neighbors. However, it is undisputed that Derry performed essentially the *532 same services for All Star that he provided his neighbors, i.e., mowing lawns, clearing leaves, and removing snow, just on a smaller scale. See Reed, 473 Mich at 537 (opinion by TAYLOR, C.J.). Therefore, we agree with the trial court’s determination that the service Derry “performed on his own was precisely the same type of work that he performed for All Star.” As such, under the workers’ compensation act, Derry is not an employee if he held himself out to and rendered lawn maintenance and snow removal services to the public or maintained a separate business offering such services. Amerisure, 196 Mich App at 574; Blanzy, 240 Mich App at 641.
We agree with the trial court that the undisputed evidence establishes that Derry held himself out as someone who performed lawn maintenance and snow removal work to individuals in his neighborhood by going door to door and by word of mouth. The facts, although undisputed, present a close question because Derry only performed such services for his neighbors on an occasional basis and did not advertise to the public at large or solicit such work from any individuals beyond his subdivision. We conclude, under the specific circumstances of this case, however, that Derry’s holding himself out to individuals in his neighborhood constitutes holding himself out to and rending service “to the public.”
The workers’ compensation act does not specifically define the term “public,” and, thus, it is appropriate to consider the term “public” as it is ordinarily defined. Martin v Dep’t of Corrections, 140 Mich App 323, 330; 364 NW2d 322 (1985), aff'd 424 Mich 553 (1986), citing People v Powell, 280 Mich 699, 703; 274 NW 372 (1937). In Powell, our Supreme Court defined the term “public” to mean “all those who have occasion to purchase, within the limits of the defendant’s capacity or ability to furnish it.” Powell, 280 Mich at 707. Within this meaning, “the *533 public,” as recognized by our Supreme Court, can constitute the individuals in one’s neighborhood, the individuals of a particular place, the community at large, the people of the state at large, or even all the people. Id. at 702-703, 707. Therefore, although Derry did not advertise his lawn maintenance and snow removal services to the public at large, but held himself out by word of mouth and door-to-door solicitation to only individuals in his neighborhood, one’s neighborhood can constitute “the public.” Id. at 702-703, quoting 50 CJ pp 844, 845; see also Martin, 140 Mich App at 329, quoting Green v Dep’t of Corrections, 30 Mich App 648, 654 n 7; 186 NW2d 792 (1971) (“public” “has been defined or employed as meaning the inhabitants of a particular place; all the inhabitants of a particular place; the people of the neighborhood”) (additional quotation marks and citation omitted). As our Supreme Court recognized in Powell, what constitutes a seller’s “public” is dependent on the limits of the seller’s capacity or ability to furnish a product. Powell, 280 Mich at 707. That is, selling “to the public” means selling “to all those who have occasion to purchase, within the limits of the defendant’s capacity or ability to furnish it.” Id. Our review of the record revealed that Derry did not own a vehicle and had not had a driver’s license since 2005 because of a suspension of his license, and relied on his girlfriend for transportation, which likely seriously limited or impeded his capacity or ability to provide lawn maintenance and snow removal services on his own to individuals beyond his neighborhood. Derry’s solicitation of lawn maintenance and snow removal services within the confines of his neighborhood under these circumstances, was sufficient, in light oí Powell, to establish that he held himself out “to the public” as rendering such services. MCL 418.161(l)(n). Reed, 473 Mich at 537 (opinion by TAYLOR, C.J.); Blanzy, 240 Mich App at 641. Accordingly, we find that Derry does not meet the statu- *534 toiy definition of an employee entitled to workers’ compensation benefits under MCL 418.161(l)(n), as interpreted by Amerisure and its progeny, and, as the trial court properly found, Derry qualified as an independent contractor at the time of the injury and is not entitled to workers’ compensation benefits under the act. Therefore, coverage under Auto-Owners’ workers’ compensation insurance policy, providing insurance for bodily injury when benefits are due as required under the workers’ compensation law, was not triggered.
But, again, we reiterate that we only reach this conclusion because we are obligated to follow the erroneous Amerisure opinion. MCR 7.215(J). Were we free to do so, we would hold that § 161(l)(n) requires that, for a person to be classified as an independent contractor rather than an employee, all three of the factors listed in the statute must be met, rather than just one. And, while Derry does meet at least one of the factors, holding his service out to the public, he also fails to meet at least one of the factors, he is not an employer under the compensation act. Therefore, while we are constrained to conclude that Derry is an independent contractor under the Amerisure interpretation, if we were free to apply our own interpretation of the statute, we would conclude that Derry is an employee of All Star because all three requirements under the statute to be considered an independent contractor were not met.
II. GENERAL LIABILITY POLICY
We next consider whether Auto-Owners’ general liability policy provides coverage for Derry’s negligence claim against All Star. It is not disputed that Derry, who suffered accidental bodily injury, triggered potential coverage un *535 der Auto-Owners’ general liability policy.[3] Auto-Owners relies on three policy exclusions that preclude liability coverage under the policy: the workers’ compensation, employer’s liability, and automobile exclusions. Derry maintains, and the trial court decided, that these exclusions do not apply and the general liability policy provides liability coverage for his injuries.
To negate coverage under its general liability policy, Auto-Owners first relies on the workers’ compensation exclusion contained in its general liability policy, which excludes coverage for “[a]ny obligation of the insured under a workers compensation. .. law.” Derry, however, was not an employee as defined in the workers’ compensation act, MCL 418.161(l)(n), and, thus, is not entitled to workers’ compensation benefits for his injuries. Accordingly, the workers’ compensation exclusion, which plainly and unambiguously bars coverage for injury compensable under workers’ compensation laws, does not apply to preclude coverage under the policy. See Nat’l Ben Franklin Ins Co v Harris, 161 Mich App 86, 90-91; 409 NW2d 733 (1987). We reach this conclusion, however, only because, as discussed above, we are required to follow the Amerisure interpretation of § 161(l)(n). If we were free to apply our interpretation of the statute, then we would hold that Derry was an employee and the workers’ compensation exclusion would apply in this case.
*536 Auto-Owners next relies on the employer’s liability exclusion to negate coverage under the policy, which precludes coverage for bodily injury to “[a]n ‘employee’ of the insured arising out of and in the course of employment by the insured[.]” The policy provides a definition for the term “employee,” but merely identifies two specific types of workers who would or would not be classified as employees under the policy. This Court in Meridian Mut Ins Co v Wypij, 226 Mich App 276, 278-281; 573 NW2d 320 (1997), analyzed an identical employee exclusion and found it appropriate to apply the common-law economic reality test in determining whether an individual is an employee within the meaning of the policy, concluding that “where the term ‘employee’ is not defined in the contract and where one party alleges that the business relationship was one of being an independent contractor rather than being an employee, a trial court may properly apply the economic reality test.” We likewise find it appropriate to employ the economic reality test.[4]
“The economic-reality test considers four basic factors: (1) control of a worker’s duties, (2) payment of wages, (3) right to hire, fire, and discipline, and (4) performance of the duties as an integral part of the employer’s business toward the accomplishment of a common goal.” Mantei v *537 Michigan Pub Sch Employees Retirement Sys, 256 Mich. App 64, 78; 663 NW2d 486 (2003). Our Supreme Court in Hoste set forth the following factors that comprise the economic reality test:
“First, what liability, if any, does the employer incur in the event of the termination of the relationship at will?
“Second, is the work being performed an integral part of the employer’s business which contributes to the accomplishment of a common objective?
“Third, is the position or job of such a nature that the employee primarily depends upon the emolument for payment of his living expense?
“Fourth, does the employee furnish his own equipment and materials?
“Fifth, does the individual seeking employment hold himself out to the public as one ready and able to perform tasks of a given nature?
“Sixth, is the work or the undertaking in question customarily performed by an individual as an independent contractor?
“Seventh, control, although abandoned as an exclusive criterion upon which the relationship can be determined, is a factor to be considered along with payment of wages, maintenance of discipline and the right to engage or discharge employees.
“Eighth, weight should be given to those factors which will most favorably effectuate the objectives of the statute.” [Hoste, 459 Mich at 568 n 6, quoting McKissic v Bodine, 42 Mich App 203, 208-209; 201 NW2d 333 (1972).]
The economic reality test requires examination of the totality of the circumstances surrounding the work performed. Mantei, 256 Mich App at 79.
Considering the testimony and affidavits presented relevant to Derry’s employment status, in light of the factors set forth under the economic reality test, we find *538 that conflicting inferences can be reasonably drawn from the evidence presented, and thus, the court improperly summarily decided that Derry was not an employee at the time of the injury within the meaning of the general liability policy. Clark v United Technologies Auto, Inc, 459 Mich 681, 694, 696; 594 NW2d 447 (1999), citing Nichol v Billot, 406 Mich 284, 302-303, 306; 279 NW2d 761 (1979).
Some evidence pointed to Derry being an employee under the economic reality test. For example, as a member of All Star’s lawn crew, Derry performed an integral part of All Star’s business and worked directly with All Star’s owners toward the accomplishment of a single goal, i.e., completing the lawn maintenance jobs for properties under contract with All Star. All Star compensated Derry with an hourly wage, as opposed to paying him a fixed amount, which is consistent with the treatment of an employee (compare Luster, 239 Mich App at 722 and McKissic, 42 Mich App at 209). All Star had the apparent authority to terminate Derry’s services and there was no indication that All Star had any liability if the relationship was terminated at will. All Star provided all the materials and equipment used and needed to complete the work. Finally, Derry performed his services under All Star’s general supervision and direction. These facts support a finding that Derry was an employee.
However, other evidence pointed to Derry being an independent contractor under the economic reality test. It was undisputed that, given the routine and repetitive nature of the work, Harrison and All Star did not directly supervise the manner in which Derry completed his work. Derry relied on income from his side jobs in addition to his income from All Star, and he held himself out to individuals in his neighborhood to render *539 and perform the same services he performed for All Star. These facts support a finding that Derry was an independent contractor.
Clearly, the evidence presented factual issues regarding Derry’s status as an employee or independent contractor that should be resolved by a trier of fact. Accordingly, because coverage under the general liability policy is dependent on Derry’s employment status, we reverse the court’s decision that Auto-Owners’ general liability policy provides liability coverage for Der-ry’s injuries as a matter of law and remand for further proceedings.
Finally, Auto-Owners relies on the auto exclusion contained in the general liability policy, which clearly and unambiguously precludes coverage for bodily injury arising out of the use, operation, loading, or unloading of an “auto.” The policy defines the term “auto”.as “a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment” (emphasis added). Under the policy, the use of an auto includes “loading and unloading,” which “does not include the movement of property by means of a mechanical device . . . that is not attached to the aircraft, watercraft, or ‘auto’.”
The term “attached” is not defined in the general liability policy. Where a term is not defined in an insurance policy, “[t]his Court must interpret the terms of the contract in accordance with their commonly used meanings.” Morinelli v Provident Life & Accident Ins Co, 242 Mich App 255, 262; 617 NW2d 777 (2000). We “may refer to dictionary definitions when appropriate when ascertaining the precise meaning of a particular term.” Id. The dictionary defines the verb “attach” as “to be fastened or joined; adhere” and “to fasten by sticking, tying, etc.” Webster’s New World Dictionary *540 (1984). Accordingly, the term “auto,” as defined by the policy, includes machinery and equipment if it is “fastened,” “joined” or “adhered” to the truck.
It is undisputed that Derry’s injuries arose out of the use of a leaf vacuum machine that he was using to load leaves onto All Star’s truck when the machine tipped over, causing the “boom” of the vacuum to strike him. The testimony, however, was also undisputed that the leaf vacuum machine was not “attached,” i.e., “fastened,” “joined,” or “adhered,” to the truck at the time of Derry’s injuries, as required for the auto exclusion to apply to preclude coverage under the general liability policy. Instead, it is undisputed that the mechanism attaching the machine to the truck was not latched or locked, which caused the machine to tip. Accordingly, the trial court properly determined that the automobile exclusion is not applicable to preclude coverage under the general liability policy for Derry’s accident.
III. COMMERCIAL AUTOMOBILE POLICY
We finally consider whether Auto-Owners’ commercial automobile policy provides liability coverage or no-fault insurance coverage for Derry’s injuries.[5] Again, to negate coverage under the policy, Auto-Owners relies on policy exclusions. However, Derry maintains, and the trial court decided, that the pertinent exclusions do not apply and the policy provides liability and no-fault insurance coverage for his injuries.
*541 As in the context of the general liability policy, the workers’ compensation exclusion contained in the automobile policy, which excludes liability coverage for “any expenses that would be payable under any workers’ compensation law[,]” is not applicable to preclude coverage because Derry’s injuries are not compensable under the workers’ compensation act. But again we emphasize that we reach that conclusion only because of our obligation to follow Amerisure. Were we free to apply our own interpretaiton of MCL 418.161(l)(n), we would conclude that Derry was covered under workers’ compensation and, therefore, the workers’ compensation exclusion contained in the automobile policy would, in fact, apply.
Further, as in the employer’s liability exclusion contained in the general liability policy, the employee exclusions contained in the automobile policy[6] are de-pendant on Derry’s status as an employee or independent contractor. As discussed already, we believe there is conflicting evidence regarding Derry’s employment status in light of the factors identified under the economic reality test. Accordingly, the issue of liability coverage under the automobile policy should not be *542 summarily decided. Instead, Derry’s employment status should be decided by a trier of fact, after which it can be determined if the employee exclusions apply to bar liability coverage under the automobile policy. Therefore, summary disposition of this issue was improper.
Auto-Owners next claims that the parked vehicle exclusion contained in its policy endorsement precludes no-fault coverage under the circumstances of this case.[7] The exclusion provides, in pertinent part:
We will not pay personal injury protection benefits for:
[[Image here]]
c. bodily injury arising out of the ownership, operation, maintenance, or use of a parked motor vehicle unless:
(1) the motor vehicle was parked in such a way as to cause unreasonable risk of the bodily injury; or
(2) the bodily injury was a direct result of physical contact with:
(a) equipment permanently mounted on the motor vehicle while the equipment was being operated or used; or
(b) property being lifted onto or lowered from the motor vehicle in the loading or unloading process; or
(3) the bodily injury was sustained by the injured person while occupying the motor vehicle. [Emphasis deleted.]
*543 The insured motor vehicle at issue here is All Star’s pickup truck. It is undisputed that, at the time of the incident, the truck was temporarily stopped, i.e., “there was no vehicular movement,” Winter v Auto Club of Mich, 433 Mich 446, 455; 446 NW2d 132 (1989) (quotation marks omitted), because Jeffrey Harrison had stopped the truck while Derry unclogged the hose of the leaf vacuum machine and had not resumed driving it at the time of the accident. The truck, even though it was only temporarily stopped, was “parked” within the meaning of the no-fault act. See Harris v Grand Rapids Area Transit Auth, 153 Mich App 829, 832; 396 NW2d 554 (1986) (in the context of the parked vehicle exclusion under the no-fault law, parking “ ‘is merely one form of stopping’ ”) (citation omitted). Because All Star’s truck was “parked” at the time of Derry’s injury, the injury arose out of the use of a parked vehicle, and thus, the policy does not provide no-fault coverage unless one of the exceptions to the parked vehicle exclusion applies.
We disagree with the trial court’s determination that this case fell within the policy’s exception to the parked vehicle exclusion where the bodily injury was a direct result of physical contact with “property being lifted onto or lowered from the motor vehicle in the loading or unloading process[.]”[8] (Emphasis deleted.) Here, it is undisputed that Derry was loading leaves into the truck with the leaf vacuum machine at the time of his injury, but his injury was not a direct result of physical contact with the leaves he was loading. Instead, his bodily *544 injury was a direct result of physical contact with the boom of the leaf vacuum machine, which tipped over as he was loading leaves onto the truck. The exception’s language requires that the injury must occur as a direct result of physical contact with the property being lifted into or lowered from the vehicle, i.e., the injured person’s body must come into contact with the property being lifted onto or lowered from the vehicle. See Winter, 433 Mich at 458-460 (“the injury must directly result from actual physical contact”). Here, Derry’s injuries were the direct result of his contact with the machine, not the leaves he was loading onto the truck. Accordingly, we find that the parked vehicle exclusion applies to preclude no-fault coverage under the automobile policy and the trial court erred, as a matter of law, in determining that the parked vehicle exclusion is inapplicable.
We next address Derry’s argument on appeal that this case falls within the policy’s exception to the parked vehicle exclusion providing no-fault coverage where the injury “was a direct result of physical contact with . . . equipment permanently mounted on the motor vehicle while the equipment was being operated or used[.]” (Emphasis deleted.) Derry sustained his injury from direct physical contact with the boom of the leaf vacuum machine when the machine tipped over. It is undisputed that the machine was not “permanently mounted” on the truck because the machine was not locked or latched to the truck at the time it tipped over causing the boom to strike Derry. Accordingly, this exception to the parked vehicle exclusion is inapplicable, and thus, the exclusion applies to preclude no-fault coverage under the facts of this case.
Finally, we decline to consider Derry’s unpreserved argument on appeal that collateral estoppel bars Auto- *545 Owners from relitigating his employment status because the trial court previously determined the issue in Derry’s negligence action against All Star and Derry’s action against Auto-Owners seeking recovery of no-fault benefits. We conclude that Derry waived his defense of collateral estoppel because he failed to raise this defense in a responsive pleading as required under MCR 2.116(D)(2). In fact, there is nothing in the lower court record indicating that Derry ever specifically raised the defense of collateral estoppel before this appeal. Regardless, we note that collateral estoppel does not act to bar relitigation of Derry’s employment status because, although both cases involved the same parties, and Derry’s status as an employee or independent contractor, at issue in the instant case, was actually and necessarily determined in the prior proceedings, the prior proceedings did not culminate in a final judgment. Ditmore v Michalik, 244 Mich App 569, 577; 625 NW2d 462 (2001). Instead, the trial court’s denial of Auto-Owners’ summary disposition motion in the earlier action was interlocutory in nature and did not finally dispose of the case. Indiana Ins Co v Auto-Owners Ins Co, 260 Mich App 662, 671 n 8; 680 NW2d 466 (2004). In fact, the trial court’s opinion in the prior proceedings specifically indicates that its order denying Auto-Owners’ motion for summary disposition neither resolves the last pending claim nor closes the case. Accordingly, collateral estoppel did not bar the relitigation of Derry’s employment status in the instant cause of action.
In sum, we conclude that Derry is not covered under workers’ compensation only because we are obligated under MCR 7.215(J) to follow the decision in Amerisure. Were we free to apply our own interpretation of MCL 418.161(l)(n), we would conclude that Derry was, in fact, an employee and that his injuries were covered *546 under workers’ compensation. And if we were permitted to reach that conclusion, we would also hold that the workers’ compensation exclusions in the automobile and general liability policies would apply. Because our disagreement with Amerisure is outcome determinative in this case and because we believe the erroneous decision in Amerisure warrants the convening of a special panel, we request that, pursuant to MCR 7.215(J)(3), the Chief Judge poll the judges of this Court to determine if a special panel should be convened.
We do, however, agree with appellant that the trial court erred by granting summary disposition with respect to the applicability of other exclusions in the automobile and general liability policies because a genuine issue of material fact exists regarding whether those exclusions apply. Accordingly, we reverse that part of the trial court’s decision and remand for further consideration of those exclusions.
Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. No costs, neither party having prevailed in full.
JANSEN, EJ., and SAWYER and SERVITTO, JJ., concurred.

 Auto-Owners does not dispute that Derry himself is not an employer subject to the workers’ compensation act, MCL 418.161(l)(n).

 At the time of the Amerisure opinion, the statutory language at issue was located in § 161(l)(d) rather than § 161(l)(n), and had only a slight change in wording that does not affect the interpretation of the statute.

 The general coverage provision of the general liability policy, provides:
We will pay those sums that the insured becomes legally obligated to pay as damages because of “bodily injury” or “property damage” to which this insurance applies. We will have the right and duty to defend the insured against any “suit” seeking those damages. However, we will have no duty to defend the insured against any “suit” seeking “bodily injury” or “property damage” to which this insurance does not apply.

 We disagree with Derry’s argument on appeal that the Court should not employ the economic reality test to determine if an individual was an employee within the meaning of the general liability policy. Derry contends the test under the workers’ compensation act, MCL 418.161(1), is the appropriate test. However, because the employer’s liability exclusion contained in the general liability policy does not refer to or is not based on the workers’ compensation act, we do not believe that the definition of employee as provided for under MCL 418.161(1) should be used to determine whether coverage is precluded under the employer’s general liability policy. See People v Yamat, 475 Mich 49, 54-58; 714 NW2d 335 (2006), suggesting that it is improper for courts to use cases interpreting insurance contract terms to interpret unambiguous statutory terms.

 Auto-Owners’ automobile policy provides liability coverage, in pertinent part:
We will pay damages for bodily injury and property damage for which you become legally responsible because of or arising out of the ownership, maintenance or use of your automobile (that is not a trailer) as an automobile. [Emphasis deleted.]

 Under the employee exclusions contained in Auto-Owners’ automobile policy, liability coverage is not provided:
l. to your employee for claims brought against him or her by another of your employees injured on the job.
m. to any person or organization for bodily injury to:
(1) an employee of that person or organization; or
(2) a spouse, child, parent, brother or sister of the employee which results from the injury to the employee;
when that injury arises out of and in the course of employment by that person or organization. [Emphasis deleted.]

 The policy’s “Michigan No-Fault Endorsement” provides:
Subject to the provisions of this endorsement and of the policy to which this endorsement is attached, we will pay personal injury protection benefits to or on behalf of an injured person for accidental bodily injury arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle, subject to the provisions of Chapter 31 of the Michigan Insurance Code. Ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle means that the involvement of the motor vehicle in the bodily injury was directly related to the transportation function of the motor vehicle. [Emphasis deleted.]

 It is not argued that the exceptions to the parked vehicle exclusion (c)(1) and (c)(3) of the no-fault endorsement apply to this case. There is no evidence indicating that the truck was parked in such a manner so as to cause an unreasonable risk of injury. Further, it is undisputed that Derry did not sustain his injuries while occupying the truck.