NOT RECOMMENDED FOR PUBLICATION
**File Name: 17a0479n.06**

No. 16-2586

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

Aug 16, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| HEMLOCK SEMICONDUCTOR OPERATIONS, LLC, | ) ) ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| v. | ) ) | |
| SOLARWORLD INDUSTRIES SACHSEN GMBH, | ) ) | OPINION |
| Defendant-Appellant. | ) ) ) | |

Before: MOORE, GILMAN, and COOK, Circuit Judges.

**RONALD LEE GILMAN, Circuit Judge.** In a breach-of-contract action, Hemlock Semiconductor Operations, LLC (Hemlock) obtained a district court judgment of nearly $800 million against SolarWorld Industries Sachsen GmbH (Sachsen). Pursuant to a provision in the parties' four long-term supply agreements (LTAs), Hemlock filed a motion to recover all of its attorney fees and costs. The district court granted Hemlock's motion in large part, awarding attorney fees of $2,815,212.22 and costs of $757,451.38. For the reasons set forth below, we **AFFIRM** the district court's award.

## I. BACKGROUND

The facts underlying the parties' dispute are described in our contemporaneously published opinion addressing the merits of the district court order granting summary judgment to Hemlock. We therefore set forth only the facts that are relevant to the present appeal.

The first three LTAs provide that, "In the event of [Hemlock's] enforcement of any term or condition in the Agreement, Buyer shall be liable to [Hemlock] for all costs, including attorney fees, incurred by [Hemlock] in enforcing the agreement . . . ." LTA IV also provides that Sachsen will be responsible for Hemlock's attorney fees and costs in enforcing the agreement, but specifies that "reasonable" fees and costs are recoverable.

In granting summary judgment, the district court ruled for Hemlock on every issue and awarded Hemlock the full amount of its requested damages. Hemlock then filed a motion for attorney fees and costs for the work of its New York-based primary counsel, Orrick, Herrington, & Sutcliffe LLP (Orrick), as well as two Michigan-based firms serving as local counsel. The district court granted Hemlock almost all of its requested fees and costs, excluding only fees and costs that Hemlock incurred in opposing a third party's motion to file an amicus brief.

## II. ANALYSIS

### A.     Standard of review

State law applies to our review of attorney-fee awards in diversity cases. *Auto. Support Grp., LLC v. Hightower*, 503 F. App'x 411, 421 n.5 (6th Cir. 2012) (citing cases). We review the district court's decision to award attorney fees under the abuse-of-discretion standard. *Id.*; *see also Smith v. Khouri*, 751 N.W.2d 472, 477 (Mich. 2008) (same).

**B.      The district court did not abuse its discretion in its award of attorney fees to Hemlock.**

Michigan law requires that attorney-fee awards be "reasonable," cautioning that reasonable fees "may differ from the actual fee charged or the highest rate the attorney might otherwise command." *Smith*, 751 N.W.2d at 478. As the party seeking attorney fees, Hemlock has the burden of demonstrating that its request is reasonable and of providing evidence to support the fee amount. *Id.* at 480.

When awarding attorney fees under Michigan law, the district court must first determine "the fee customarily charged in the locality for similar legal services." *Id.* at 479. The court must then calculate the reasonable number of hours spent working on the case by each attorney. *Id.* Finally, the court may use its discretion to consider whether to adjust the attorney-fee award upward or downward based on a number of factors. *Id.* at 480. These include:

> (1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client.

*Id.* at 479 (quoting *Wood v. Detroit Auto. Inter-Ins. Exch.*, 321 N.W.2d 653, 661 (Mich. 1982)).

### 1. *The district court did not abuse its discretion in using statewide data from Michigan State Bar surveys as the customary locality rate.*

The Michigan Supreme Court has approved of the use of the Michigan State Bar Economics of Law Practice Surveys (ELS) as a reference point for calculating a customary local fee. *Id.* These surveys compile statistics on the hourly rates of attorneys based on factors such as office location, firm size, years of experience, and type of law practice. Trial courts often consult the ELS as a starting point, but may award a fee above "the highest amount supported by the locality" if other factors render such an award appropriate. *Fraser Trebilcock Davis &*

*Dunlap PC v. Boyce Trust 2350*, 850 N.W.2d 537, 564 (Mich. Ct. App. 2014), *rev'd on other grounds*, 870 N.W.2d 494 (Mich. 2015).

Although two law firms served as local counsel to Hemlock, Sachsen limits its challenge to the fee awarded for work done by Hemlock's primary counsel, Orrick, so we will discuss only Orrick's fees. Sachsen argues that the district court improperly used the rate for top New York law firms as the "locality" rate, and that the attorney-fee award should instead be based on the hourly rates for attorneys in Bay City, Michigan, where the court is located. But Sachsen misconceives the court's analysis. Following the instructions of the Michigan Supreme Court in *Smith*, the court began its analysis of the fee for both partners and associates by discussing the ELS rates. The court never indicated that New York was the proper locality to consider.

Rather, the district court reasonably concluded that the statewide Michigan ELS data was a "reasonable starting place" for calculating Orrick's fees. The court explained that the Bay City data was not representative of the rates for the type of legal services provided by Orrick in this complex, global commercial dispute. Small regional firms such as those found in Bay City are not ordinarily equipped to provide such services, so the court concluded that the statewide survey, which included larger firms, was a better benchmark. The court then cited Michigan law in support of the decision to use the statewide ELS data. *See Adair v. Michigan* (On Fourth Remand), 836 N.W.2d 742, 748 (Mich. Ct. App. 2013) (rejecting the use of the local ELS information and relying on statewide data to determine fees because the dispute was complex, did not easily fit into any of the practice categories outlined in the ELS, and required legal services from a "limited and specialized market").

For the Orrick partners, the district court determined that the customary locality rate was $570 per hour—the 95th percentile rate for Michigan attorneys in large firms. (R. 136, PageID

4

5409)  The court used the 75th percentile rate for those firms—$475 per hour—as the customary

locality rate for the Orrick associates.  Sachsen does not dispute that these percentiles properly

reflect the Orrick attorneys' high level of skill.  Accordingly, we find the court's reasoning

persuasive and conclude that it did not abuse its discretion in relying on statewide Michigan data

as the locality rate.

> 2.  ***The district court did not abuse its discretion in concluding that the number
> of hours billed by Orrick was reasonable.***

Sachsen also raises a number of challenges to the district court's finding that Orrick

billed a reasonable number of hours.  First, Sachsen objects to the award of prelitigation attorney

fees to Hemlock.  Sachsen argues that prelitigation fees should be awarded only if the parties'

contract expressly so provides.  The sole authority cited by Sachsen in support of its argument is

*Bishop v. Westchester Place Ass'n*, No. 313239, 2014 WL 3529419, at *2–3 (Mich. Ct. App.

July 15, 2014).  True enough, the Michigan Court of Appeals in *Bishop* awarded prelitigation

fees pursuant to an express contractual provision, but the decision gives no indication that such

an award would be improper absent the express provision.

As Hemlock and the district court explain, the LTAs provide that Hemlock will receive

attorney fees incurred in "enforcing" the agreement.  The court persuasively concluded that the

word "enforcing" is broad enough to include prelitigation tasks, such as demanding assurances of

performance and attempting to resolve the dispute amicably.  Furthermore, the court noted that

policy considerations and efficiency concerns favor attempting to enforce agreements without

litigation.  We agree.

Second, Sachsen argues that the district court did not adequately scrutinize Orrick's

billing records in a "line by line" manner.  Michigan law requires Hemlock to submit "detailed

billing records, which the court must examine and opposing parties may contest for

5

reasonableness." *See Smith*, 751 N.W.2d at 480. Hemlock satisfied its burden on this point by submitting 356 pages of billing records, which contain daily entries of each attorney's billable hours and detailed descriptions of the tasks performed for each time entry. The district court opinion thoughtfully explained why the number of hours billed is reasonable in general and analyzed the individual time entries specifically challenged by Sachsen. We acknowledge the court's statement that it lacked "the resources to exhaustively audit every line of Orrick's invoices." But Sachsen's argument that this statement indicates an abuse of discretion is meritless, given that the court's opinion as a whole indicates that the court in fact carefully reviewed the billing records.

Third, Sachsen argues that the district court abused its discretion by failing to reduce the overall attorney-fee award by 20 percent to adjust for Orrick's billing of allegedly excessive hours. Sachsen specifically objects to Orrick's use of "block billing," meaning that attorneys listed multiple tasks in one daily time entry. According to Sachsen, block billing prevents the court from determining whether the number of hours spent on each task was reasonable. The court declined to so reduce the fee award, concluding that Orrick's invoices described tasks in sufficient detail to be evaluated for reasonableness. Although Sachsen cited a few district court cases reducing fee awards due to the use of block billing, the court reasonably found the cited cases distinguishable because the invoices in those cases were too vague for the court to determine the nature of the tasks performed. Furthermore, the Michigan Court of Appeals has upheld attorney-fee awards for block-billed time entries where the descriptions of tasks were specific. *See, e.g.*, *Rudnicki v. Ateek*, No. 328130, 2016 WL 5930121, at *3 (Mich. Ct. App. Oct. 11, 2016); *Bonacci v. Ferris State Univ.*, Nos. 318136 & 319101, 2015 WL 160214, at *10

(Mich. Ct. App. Jan. 13, 2015). We therefore conclude that the district court did not abuse its discretion in declining to reduce the fee award due to Orrick's use of block billing.

Sachsen further argues that Orrick's attorneys billed hours for duplicative tasks by multiple attorneys, but cited only one example—the fact that seven attorneys worked on Hemlock's motion for summary judgment. The district court adequately explained that the number of hours billed was reasonable because the summary-judgment proceedings were complex and a significant monetary amount was at stake. Furthermore, the court noted that the use of seven attorneys was not inherently problematic because, if the two Orrick partners had been the only attorneys working on the motion, the overall fee would have been much higher. We agree.

Sachsen next challenges the number of hours that Orrick spent preparing for depositions and the fact that both German- and American-based Orrick attorneys billed for researching German antitrust law. But the court properly noted that significant travel time and preparation for those depositions was reasonable, given that ten different depositions were taken, several of which were overseas and were conducted in German. The court also carefully reviewed Orrick's bills for research on German antitrust law. It reasonably concluded that German-based attorneys conducted most of the research, addressing Sachsen's concerns that having American-based attorneys research those issues would be inefficient. Furthermore, the court noted that Sachsen's antitrust defense, which was potentially dispositive of the litigation, was significant enough that the hours billed by the American-based attorneys were reasonable. We agree.

Sachsen also objected to Orrick having three attorneys present at certain depositions when only one did the questioning. The district court noted that this objection might indeed have merit but for the fact that Sachsen also had three of its attorneys present for the same depositions.

7

What is sauce for the goose is sauce for the gander. Under these circumstances, we find no abuse of discretion in not discounting the attorney fees for the taking of depositions.

Finally, Sachsen argues that Orrick's fee should be reduced by 8.3 percent—or one-twelfth—because Orrick's work should have required less time due to an "efficiency factor" gained from serving as counsel to Hemlock in twelve similar lawsuits. But Sachsen cites no authority to indicate that Michigan law requires such a fee reduction. The district court reasonably explained that no such reduction was justified because there was no evidence that any of Orrick's hours were duplicative of work done for other cases. We therefore conclude that the district court did not abuse its discretion in refusing to apply an "efficiency factor" in determining that Orrick billed a reasonable number of hours.

### 3. *The district court did not abuse its discretion in concluding that the reasonable fee for Orrick's services was higher than the base hourly rate.*

In concluding that Orrick's actual hourly rates were reasonable, the district court applied the factors set forth in *Wood v. Detroit Automobile Inter-Insurance Exchange*, 321 N.W.2d 653, 661 (Mich. 1982), to grant an upward adjustment from the customary locality rates. These actual hourly rates (after applying a 10 to 13 percent discount that Orrick gave to Hemlock) were $953 for Orrick partner J. Peter Coll, $770 for Orrick partner John Ansbro, and from $473 to $666 for Orrick's associates. Although the court reached this conclusion at the first step of the analysis (the customary locality rate) rather than the third (the application of the *Wood* factors), we conclude that this was not an abuse of discretion. The court carefully considered each of the relevant *Wood* factors and specified which factors it relied on, as required under Michigan law. Remanding for the district court to move its consideration of the *Wood* factors to the third step of the analysis would be a waste of judicial resources because the final attorney-fee calculation would remain the same.

The district court found that all of the *Wood* factors that relate to the attorney-fee calculation supported an hourly rate above the customary locality rate. We briefly summarize the court's findings on each factor, all of which support a heightened fee award:

- Professional standing and experience: Orrick's attorneys in general were well regarded for their skill. The partners in particular were highly experienced: Mr. Coll had over 50 years of legal practice and Mr. Ansbro had over 20.

- Skill, time, and labor involved: The dispute involved numerous complex legal issues, including defenses raised by Sachsen that were based on foreign law. As the district court noted, "Hemlock had to serve a foreign corporation, research foreign antitrust law, conduct overseas depositions, and interpret and enforce sophisticated delivery contracts."

- Amount in question and results achieved: Hemlock prevailed on every issue at the summary-judgment stage and obtained the full amount of damages it sought. The total amount of attorney fees and costs was less than one half of one percent of the award of damages.

- Difficulty of the case: The same considerations relevant to the second factor also apply here.

- Nature and length of the attorney-client relationship: Orrick advised Hemlock on the LTAs for over eight years and represented Hemlock in twelve lawsuits involving similar LTAs. Although the district court did not explicitly so mention in discussing this factor, we also note that the discount that Orrick provided to Hemlock reflected a longstanding attorney-client relationship.

The district court further noted that, even though the hourly rates of the partners and most senior associates were above the customary locality rate, Orrick kept the number of hours that those attorneys billed relatively low by using a large number of lower-cost attorneys and support staff. Orrick's average hourly rate, or firm-wide total fee divided by the total hours worked, was $470. This is lower than the 75th percentile overall rate for Michigan attorneys working in firms of over 50 attorneys ($475), which the district court determined was the customary locality rate for Orrick associates. The district court therefore did not abuse its discretion in determining that Orrick's hourly rates were reasonable.

**C.      The district court did not abuse its discretion in awarding costs to Hemlock.**

Finally, Sachsen argues that the district court abused its discretion by awarding costs for which Hemlock failed to provide itemized receipts. Michigan law imposes a reasonableness requirement on the award of costs. *Adair v. Michigan*, No. 230858, 827 N.W.2d 740, 750 (Mich. Ct. App. 2012), *rev'd in part on other grounds by Adair v. State*, 830 N.W.2d 383, 383 (Mich. 2013). The district court found that Hemlock had introduced sufficient evidence of its costs because Orrick's monthly invoices included a "disbursements" section. That section listed the amount for each general type of cost incurred, such as "Outside Services" and "Expert; Consultants," but was not itemized. The court reviewed Orrick's invoices and concluded that the costs "seem[ed] reasonable given the circumstances."

We acknowledge that the "disbursements" sections of Orrick's invoices list costs in very general terms. But we have found no Michigan authority requiring that costs be proven with any certain level of specificity. And as Hemlock points out, the descriptions of the attorney's tasks in the invoices provide context to suggest the nature of the costs incurred. Under our deferential

10

standard of review, we therefore conclude that the district court did not abuse its discretion in determining that Orrick's invoices provided sufficient evidence of costs.

### III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the district court's grant of attorney fees and costs to Hemlock.